# EXHIBIT 1

**Issued by the**

# UNITED STATES DISTRICT COURT

**Northern District of California**

| | |
|---|---|
| Apple Inc. and NeXT Software Inc. (f/k/a/ NeXT Computer, Inc.), <br><br>       Plaintiffs, <br> vs. <br><br> Motorola, Inc. and Motorola Mobility, Inc., <br><br>       Defendants. | § <br> § <br> § <br> §    **SUBPOENA IN A CIVIL CASE** <br> §    Civil Action No. 10-CV-662 (BBC) <br> §    Pending in Other Jurisdiction: <br> §    U.S.D.C. – Western District of Wisconsin <br> § <br> § |

TO:

Google Inc.

c/o Corporate Legal Department

1600 Amphitheatre Parkway

Mountain View, CA 94043

☒   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case pursuant to Rule 30(b)(1) of the Fed. R. Civ. P. The deposition will be recorded by video and stenographic means.

| PLACE OF DEPOSITION <br> Weil, Gotshal & Manges, LLP, <br> 201 Redwood Shores Parkway, Redwood Shores, CA 94065 | DATE AND TIME <br> June 9, 2011 <br> 9:00 a.m. |
|---|---|

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below:   **See Exhibit A**

| PLACE <br> Weil, Gotshal & Manges, LLP, c/o Jill J Ho, <br> 201 Redwood Shores Parkway, Redwood Shores, CA 94065 | DATE AND TIME <br><br> May 31, 2011 <br> 9:00 a.m. |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure. 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE <br><br> ATTORNEY FOR PLAINTIFFS APPLE INC. AND NEXT SOFTWARE INC. | DATE <br><br> May 20, 2011 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Jill J. Ho

Weil, Gotshal & Manges LLP, 201 Redwood Shores Parkway, Redwood Shores, CA 94065 U.S.A.

(650) 802-3000

---

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
| SERVED | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|

| SERVED ON (PRINT NAME) | TITLE |
|------------------------|-------|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____      _____

             DATE      SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

' (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.

Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT A TO GOOGLE INC.'S SUBPOENA

## I.  Definitions and Instructions

The following definitions and instructions shall apply to these requests:

1.      The terms "You," "Your," or "Google" shall mean Google Inc., and any and all past and present parent, sister, affiliate, subsidiary, partnership, joint venture, predecessor-in-interest, successor-in-interest, division, department, corporate subunit, or other business entity; and any and all past and present officers, directors agents, employees, consultants, attorneys, and other persons or entities acting or purporting to act on behalf of any of the foregoing.

2.      The term "Apple" shall mean Apple Inc. and its predecessor, Apple Computer Inc., and including without limitation all of its corporate locations, and all predecessors, subsidiaries, parents, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint-venture or partnership relationships with Apple, and others acting on behalf of Apple.

3.      The term "Motorola Solutions" is defined to mean and refer to Motorola Solutions, Inc. and all of its corporate locations, and all predecessors, subsidiaries, parents, and affiliates, including without limitation Motorola, Inc., the Mobile Devices segment of Motorola, Inc., and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint-venture or partnership relationships with the aforementioned entities, and others acting on their behalf.

4.      The term "Motorola Mobility" shall mean and refer to Motorola Mobility, Inc. and all of its corporate locations, and all predecessors, subsidiaries, parents, and affiliates, including without limitation Motorola SpinCo Holdings Corp., and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint-venture or partnership relationships with the aforementioned entities, and others acting on their behalf.

1

5. The term "Motorola Accused Product(s)" shall mean all electronic mobile devices, such as smartphones, and associated software, including operating systems, user interfaces, and other application software designed for use on, and loaded onto, such devices that are designed, made, used, developed, researched, tested, sold, offered for sale, manufactured, or imported by or at the direction of Motorola including but not limited to: the Motorola Atrix, BackFlip, Bravo, Charm, Cliq, Cliq XT, Cliq 2, Defy, Devour A555, Droid, Droid 2, Droid 2 Global, Droid X, Droid Pro, Flipout, Flipside, i1, and Xoom.

6. The term "Android Platform" shall mean any and all versions of the Android Platform included on or used by any of the Motorola Accused Products, including but not limited to version 1.0, version 1.5, version 1.6, version 2.0, version 2.1, version 2.2, version 2.3, and version 3.0.

7. The term "Software" means all forms of code, including Source Code, object code, firmware, compiled code, byte code, interpreted code, any form of code stored in any storage.

8. The term "Software Module" means a logical grouping of Source Code, including but not limited to frameworks, libraries, application programming interfaces, layers, components, and services.

9. The term "Installed By Default" means that the particular referenced Software is installed on a product prior to the importation of that product into the United States.

10. The term "action" is defined to mean the above-captioned case pending before the United States District Court for the Western District of Wisconsin, entitled *Apple Inc. v. Motorola, Inc. and Motorola Mobility, Inc.*, Case No. 10-CV-662 (BBC).

11. The term "Apple Patent(s)-in-Suit" shall mean, individually and collectively, U.S. Patent Nos. 7,479,949, 6,493,002, 5,838,315, RE 39,486, 6,424,354, 6,343,263, 6,275,983, 5,969,705, 5,946,647, 5,929,852, 5,915,131, 5,566,337, 5,519,867, 5,481,721, and 5,455,599.

12.     The term "Motorola Patent(s)-in-Suit" shall mean, individually and collectively, U.S. Patent Nos. 5,311,516, 5,319,712, 5,490,230, 5,572,193, 6,175,559, and 6,359,898.

13.     The term "all" shall mean "any and all," so as to bring within the scope of the requests herein all documents and things that otherwise might be construed to be outside its scope.

14.     The terms "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a request all information that might otherwise be construed to be outside its scope

15.     The terms "any" or "each" should be understood to include and encompass "all."

16.     The terms "communication" and "correspondence" are used in a comprehensive sense, and mean, refer to, and include any instance in which any person has had contact with any other person including by any oral or written utterance, question, comment, inquiry, notation, or statement of any nature whatsoever, by and to whomsoever made, including (but not limited to) writings, documents, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and understandings.

17.     The terms "concern," "concerning," "evidencing," "relating to," "relate," "relates to," "related to," "referring or relating to," "referring to," "regarding," "comprising," "comprise," and "refer or relate to" mean, in whole or in any part, alluding to, responding to, concerning, relating to, connected with, involving, commenting on, in respect of, about, associated with, discussing, evidencing, showing, describing, reflecting, analyzing, summarizing, memorializing, consisting of, constituting, identifying, stating, tending to support, tending to discredit, referring to, or in any way touching upon.

18.     The terms "Document" and "Documents" shall be construed under the broadest construction under the Federal Rules of Civil Procedure, and shall include any reduction of communication, information, or data to tangible form, including computer or magnetic

memory or storage, and any written, recorded, or filmed graphic matter of any kind or nature, however produced or reproduced, including originals, drafts, or non-identical copies, wherever located. The term "documents" shall include (but is not limited to) books, contracts, agreements, correspondence, computer tapes, discs, printouts, keypunch cards, e-mail entries, memoranda, diaries, notes, reports, bulletins, printed forms, telegraphic communications, pleadings and other legal papers, notes, telexes, telegrams, telecopies, facsimile reproductions or "faxes," factual compilations, data compilations, statistical compilations, plans, diagrams, journals, change orders, studies, surveys, sketches, art work, graphics, checks ledgers, catalogues, brochures, pamphlets, press releases, advertisements, invoices, minutes, photographs, microfilms, microfiche, films, personnel files, quotes, stenographic notes, computer discs, telephone records, schedules, bids, voice recordings, transcriptions, and television commercial photoboards. This definition shall apply to all documents on the particular subject in your possession, custody, or control, or that of your attorneys, agents, employees, officers, directors, or representatives, irrespective of who generated, prepared, or signed the documents. The term "document" or "documents" shall also include all attachments, appendices and enclosures to the document.

19.    The term  "Thing" shall be construed under the broadest possible construction under the Federal Rules of Civil Procedure.

20.    The terms "or" and "including," and similar words of guidance, are merely intended as guidance and should not be construed as words of limitation; the word "or," for example, shall include the word "and," as appropriate, and the word "including" shall not be used to limit any general category description that precedes it.

21.    The term "person" means, refers to, and includes any natural individual in any capacity whatsoever, and all entities of every description, including but not limited to, associations, organizations, companies, partnerships, joint ventures, corporations, trusts, and estates, and all divisions, departments, and other such units thereof or therein.

22.    You are required to respond to these requests for production drawing upon all materials in your actual or constructive possession, custody, or control, including materials

that you have a right to secure from any other source. These sources include (but are not limited to) your attorneys, agents, officers, and employees.

23.     In the event that you make a proper and timely objection to any individual document production request or a portion thereof, please respond to all portions of that request that do not fall within the ambit of your objection.

24.     Documents from any single file should be produced in the same order they were found in such file. If copies of documents are produced in lieu of the originals, such copies should be legible and bound or stapled in the same manner as the original.

25.     For any document request that is objected to on the ground of privilege, the work product doctrine or any other purported privilege or immunity from discovery or right of privacy, please provide the following information: (a) the basis for the objection sufficient to establish the privilege or doctrine asserted; (b) a brief identification and description of the withheld document, to the extent it can be done without violating such privilege or doctrine, including:

(i)     the type of document (*e.g.*, letter, memorandum, notes, reports, etc.);

(ii)    date;

(iii)   title;

(iv)    subject matter;

(v)     name(s) of author or signer; and

(vi)    name(s) of all recipients.

26.     If you object that a term or phrase is vague, ambiguous, or indefinite then provide your understanding of the term or phrase and respond accordingly.

27.     These requests include all attachments to the specifically described documents, along with envelopes, explanatory notes, memoranda and all other such material that accompanied the document. If the specific document requested elicited a response, that response

5

is included in the category of requested documents. If the document itself was a response, the document to which it is responding is included in the category of requested documents.

28.     The past tense shall be construed as the present tense or the future tense, and the future tense as the present or past tense, so as to bring within the scope of the requests herein all documents or writings that might otherwise be construed to be outside the scope.

## II.  Topics for Examination

1.      Communications between Google (or anyone acting on behalf of Google) and Motorola Solutions, Motorola Mobility (or anyone acting on behalf of Motorola Solutions or Motorola Mobility) regarding any of the Apple Patents-in-Suit, Motorola Patents-in-Suit, or any litigation involving both Apple and Motorola, including but not limited to this action.

2.      Communications between Google (or anyone acting on behalf of Google) and Motorola Solutions, Motorola Mobility (or anyone acting on behalf of Motorola Solutions or Motorola Mobility) regarding the Android Platform; the Motorola Accused Products; or Apple.

3.      Google's involvement in the design of hardware, Software, or architecture of any Motorola Accused Products, including identification of every individual who participated in any such involvement and a complete account of the role each such person played in the involvement.

4.      Google's first awareness of each of Apple's Patents-in-Suit.

5.      Google's Communications with any Entity regarding the Apple Patents-in-Suit; any litigation between Apple and Motorola; or the features or functionalities of the Android Platform.

6.      Google's involvement in conceiving, designing, developing, engineering, manufacturing, or testing the Motorola Accused Products, including identification of every individual who participated in any such involvement and a complete account of the role each such person played in the involvement.

7.      Any agreement, contract, or understanding between Google and Motorola related to or concerning any Motorola Accused Product.

8.      Promotions and sales, planning and strategy, focus group information, press releases, market analyses, analyst reports, and competitive analyses relating to each Motorola Accused Product and the Android Platform.

9.      Any plan or attempt to design any Motorola Accused Product or the Android Platform to avoid infringement of the Apple Patents-in-Suit.

10.     For each Motorola Accused Product, the existence and nature of any differences between the Open Source Android code available at http://source.android.com/source/download.html and the Android Platform Source Code provided by Google to Motorola.

11.     The development, use, and implementation of the process(es) and/or functionality(ies) in the Android Platform for locking and unlocking the touchscreen.

12.     The development, use, and implementation of the process(es) and/or functionality(ies) in the Android Platform providing customized title bars for applications.

13.     The development, use, and implementation of the Notification Window feature in the Android Platform.

14.     The development, use, and implementation of all frameworks or mechanisms for inter-process communications within the Android Platform, including but not limited to the Binder framework, the Binder driver, the Android Interface Definition Language ("AIDL"), and the AIDL compiler.

15.     The decision to utilize the Binder framework, the Binder driver, the AIDL, and the AIDL compiler in the Android Platform, including any technical or commercial reasons for such a decision, and the basis for Google's decision to include the Binder framework in the Android Platform.

16.     Any enhancements or modifications made by Google to the Standard Linux Kernel that relate to or are used to support inter-process communication, including any enhancements or modifications related to the Binder framework.

17.     The development, use, and implementation of the process(es) and/or functionality(ies) in the Android Platform by which object-oriented classes send commands, messages, or other communications to the Dalvik Virtual Machine in Android, whether directly or indirectly.

18.     The development, use, and implementation of the process(es) and/or functionality(ies) in the Android Platform by which object-oriented classes receive commands,

messages, or other communications from the Dalvik Virtual Machine in the Android Platform, whether directly or indirectly.

19.     The development, use, and implementation of any Software Modules in the Android Platform that are used to implement any dynamic linking, dynamic loading, dynamic binding, deferred linking, deferred loading, deferred binding, and/or just-in-time loading functionality.

20.     The development, use, and implementation of the process(es) and/or functionality(ies) by which the Android Platform determines whether or not Java objects are present in executable memory, including but not limited to memory such as RAM, prior to allowing said objects to be invoked.

21.     The development, use, and implementation of the process(es) and/or functionality(ies) in the Android Platform by which a user may subscribe to notifications from events (or "Intents") when those events are created or detected.

22.     The development, use, and implementation of the 'Linkify' feature in the Android Platform.

23.     The development, use, and implementation of the process(es) and/or functionality(ies) that recognize and allow data structures such as telephone numbers, e-mail addresses, physical addresses, and Internet universal resource locators (URLs) to be selected as hyperlinks in the messaging applications in the Android Platform, including but not limited to the Gmail, Email, text messaging, instant messaging (IM) and multimedia messaging service (MMS) applications.

24.     The development, use, and implementation of the process(es) and/or functionality(ies) in the messaging applications in the Android Platform, including but not limited to the Gmail, Email, text messaging, instant messaging, and multimedia messaging service (MMS) applications, which, upon user selection of data structures such as telephone numbers, e-mail addresses, physical addresses, and Internet URLs (for example, selection by tapping the screen area corresponding to the data structure with one's finger), provide a user with

9

a menu of options including available activities or functions to perform on or using those data structures.

       25.    The identity, design, use, and operation of each process, application, service, or software in the Android Platform or created by Google for any Motorola Accused Product that provides notifications, updates, events, or instructions to other processes or applications for controlling a user interface display, including the identity, design, use, and operation of the processes or applications that receive the notifications, updates, events, or instructions or otherwise create, interact with, implement, or use the Identified Background Service.

       26.    The development, use, and implementation of the process(es) and/or functionality(ies) in the Google Talk application in the Android Platform by which the Talk application's user interface sends messages, commands, or any other communications to the GTalk service.

       27.    The development, use, and implementation of the process(es) and/or functionality(ies) in the Google Talk application in the Android Platform by which the GTalk service performs processes that affect, directly or indirectly, the Google Talk application.

       28.    The development, use, and implementation of the process(es) and/or functionality(ies) in the Google Talk application in the Android Platform by which the Google Talk application performs processes that affect, directly or indirectly, the GTalk service.

       29.    The development, use, and implementation of the process(es) and/or functionality(ies) in the Google Talk application in the Android Platform by which the GTalk service sends messages, commands, or other communications to the Google Talk application.

       30.    The identity of all Software Modules within any Android Platform source code, including but not limited to those that contain native functions, that enable applications to: (i) create or spawn new threads; (ii) control threads; (iii) obtain information relating to a thread; (iv) reference a task; (v) control a task; (vi) schedule a thread; (vii) synchronize a thread; and (viii) terminate a thread.

31.     The development, use, and implementation of the process(es) and/or functionality(ies) of the Google Cloud to Device Messaging.

32.     The development, use, and implementation of the software, firmware, and/or source code for the following Java objects in the Android Platform including, but not limited to, their capability to communicate calls to hardware devices used for graphics output in the Motorola Accused Products:  SkDraw object; Canvas object; and Drawable object.

33.     The development, use, and implementation of the Android java.net package, including but not limited to:  URLStreamhandler; URLConnection; HttpURLConnection; HttpsURLConnection; and JarURLConnection.

34.     The development, use, and implementation of any software, firmware, or other source code which implements, subclasses, or in any way extends or modifies any of the following classes, components, or services:  MediaPlayer,  MediaRecorder, Surface, SurfaceFlinger, WindowManagerService, Camera, AudioFlinger, AudioHardwareInterface, or AudioPolicyManager, ActivityManagerService.

35.     The development, use, and implementation of Software Modules that provide access to remote network resources, application programming interfaces that facilitate access to remote network resources; Software Modules for viewing and/or editing network resource.

36.     The development, use, and implementation of any software classes that represent or implement network resources in the Motorola Accused Products or that facilitate communication between applications and Software Modules that provide access to a data network.

37.     The development, use, and implementation of any software classes that represent or implement network resources in the Motorola Accused Products.

38.     The development, use, and implementation of the layered structure of the Android Platform, including the Applications, Application Framework, Libraries, Android Runtime, and Android Kernel

11

39.     The development, use, and implementation of the App Widget in the Android Platform.

40.     The development, use, and implementation of the applications Installed By Default that provide App Widgets.

41.     The development, use, and implementation of the home screen application, including but not limited to functionality allowing a user to save links to internet resources on the home screen or Software Modules enabling objects representing remote network resources to be saved as graphical entities.

42.     For each version of the Android Platform, the relationship and/or interactions between any one or more of the following classes and any codec with which that class can and/or does interact: MediaPlayer, MediaRecorder, Surface, SurfaceFlinger, WindowManagerService, Camera, AudioFlinger, AudioHardwareInterface, or AudioPolicyManager.

43.     Separately for each version of the Android Platform, the design, implementation, operation, and use of the Android Media Framework implemented in that version.

44.     The development, use, and implementation of software, firmware, or other source code used to implement any of the following applications: Android Market (and supporting services), Amazon MP3, Blockbuster, Email, Gmail, Calendar, Browser, Photo Gallery, Kindle, News, News and Weather, Skype Mobile, Social Networking, Talk, YouTube, Weather AppWidget, and Music Player.

45.     For each Motorola Accused Product, the development, use, and implementation of the software classes enabling communication between applications and Software Modules that provide access to a data network.

46.     The development, use, and implementation of any applications, Java objects, devices, or other software or hardware in each of the Camera, MediaPlayer, MediaRecorder, Audio, Surface classes in the Android Platform, and their equivalent classes (if

12

any) included in each version of the Android Platform, that send commands, messages, or other communications to said classes.

47.     Any process(es) and/or functionality(ies) performed on information received from any applications, Java objects, devices, or other software or hardware by each of the Camera, MediaPlayer, MediaRecorder, Audio and Surface classes in the Android Platform, and their equivalent classes (if any) included in each version of the Android Platform.

48.     The commands, messages, or other communications that each of the Camera, MediaPlayer, MediaRecorder, Audio and Surface classes, as well as their equivalent classes (if any) included in each version of the Android Platform, are able to send to other Java objects, applications, devices, or other software or hardware.

49.     Any applications, Java objects, devices, or other software or hardware that receive commands, messages, or other communications from each of the Camera, MediaPlayer, MediaRecorder, Audio and Surface classes in the Android Platform, and their equivalent classes (if any) included in each version of the Android Platform.

50.     For each version of the Android Platform, the implementation and/or use of any Software provided by and/or originating from PacketVideo Corporation that is contained, included, and/or used in that version.

51.     For each version of the Android Platform, any and all changes made to any Software provided by and/or originating from PacketVideo Corporation that is contained, included, and/or used in that version.

52.     For each version of the Android Platform, the implementation and/or use of the PacketVideo multimedia framework.

53.     For each version of the Android Platform, the implementation and/or use of the Media I/O (MIO) component.

54.     For each version of the Android Platform, the implementation and/or use of the OpenMax Framework.

55.     For each version of the Android Platform, how the Media Framework is "Based on [the] PacketVideo OpenCORE platform, " as described, for example in "Android Anatomy and Physiology," androidteam.googlecode.com/files/Anatomy-Physiology-of-an-Android.pdf, at 42.

56.     For each version of the Android Platform, how the Media Framework includes "Support for hardware / software codec plug-ins," as described, for example, in "Android Anatomy and Physiology,"  androidteam.googlecode.com/files/Anatomy- Physiology-of-an-Android.pdf, at 42.

57.     For each version of the Android Platform, any sequence diagrams (including UML sequence diagrams) and/or UML diagrams, that depict and/or include the classes MediaPlayer, MediaRecorder, PVMediaPlayer, PVMediaRecorder, AndroidSurfaceOutput, PVRefFileOutput, PVFMAudioMIO, or PVFMVideoMIO.

58.     For each version of the Android Platform, the relationship and/or interactions between any one or more of the following classes and any codec with which that class can and/or does interact: MediaPlayer, MediaRecorder, PVPlayer, and PVMediaRecorder.

59.     The subject matter of the "Android 1.6 Compatibility Definition," as found, for example, at http://source.android.com/compatibility/android-1.6-cdd.pdf.

60.     The subject matter of the "Android 2.1 Compatibility Definition," as found, for example, at http://source.android.com/compatibility/android-2.1-cdd.pdf.

61.     The subject matter of any and all compatibility definition(s) for any version(s) of the Android Platform.

62.     The subject matter of "Noisy Androids: Mastering the Android MediaFramework," as found, for example, at http://dl.google.com/io/2009/pres/Mastering_the_Android_Media_Framework.pdf.

63.     For each version of the Android Platform, the implementation and/or use of the Stagefright Multimedia Framework, including but not limited to Stagefright Player and

14

AwesomePlayer, along with each and every codec that can or does interact with the Stagefright Media Framework.

64.     The development, use, and implementation of the App Widget feature in the Android Platform.

65.     For each Motorola Accused Product, the identity, design, use, and operation of the applications Installed By Default that provide App Widgets.

66.     The development, use, and implementation of the software, firmware, and/or source code for App Widgets provided by Google for use in the Motorola Accused Products, including but not limited to their ability to utilize network components such as modems and/or antennas to access other devices or the Internet.

67.     For each Motorola Accused Product, the development, use, and implementation of the hardware that performs real-time signal processing operations, such as data transforms.

68.     For each Motorola Accused Product, the development, use, and implementation of the Software Modules whose purpose or effect is to abstract application Software from a real-time signal processor implementation.

69.     For each Motorola Accused Product, the development, use, and implementation of the driver Software for any real-time data input/output hardware.

70.     For each Motorola Accused Product, the development, use, and implementation of the Software Modules or hardware that constitute an adapter between applications and any real-time data input/output hardware.

71.     The development, use, and implementation of the streaming audio, streaming video, and video conferencing functionalities of the Android Platform, including but not limited to the datapath for sending audio, video, and video conferencing data to and from a data source and a real-time signal processor, such as a digital signal processor, including but not limited to Software Modules and multimedia applications that access the real-time signal processor.

15

72. Testing within the United States of the Android Platform on the Motorola Accused Products.

73. Testing within the United States of Java applications that access operating system services on the Motorola Accused Products in the United States.

74. The identity of all Java applications developed by Google that are Installed By Default on the Motorola Accused Products.

75. The design, use, and operation of all Java applications developed by Google that are Installed By Default on the Motorola Accused Products.

76. Google's advertisement or dissemination of information regarding Java applications developed by Google that are Installed By Default on the Motorola Accused Products.

77. The identity, design, use, and operation of all Java applications developed by Google that are available for download onto the Motorola Accused Products.

78. The way in which Google makes Java applications developed by Google available for download onto the Motorola Accused Products, including all websites where such applications are available for download.

79. The number of times that Java applications developed by Google for the Motorola Accused Products have been downloaded from the websites where such applications are available for download, including the number of downloads that occurred within the United States.

80. Google's advertisement or dissemination of information regarding Java applications that are available for download onto the Motorola Accused Products, including advertisements and other literature regarding the availability of said Java applications for download onto the Motorola Accused Products and including instructions provided to end users about the download, installation, and use of said Java applications.

81. Google's provision of information or instructions to third-party developers of Java applications for the Android Platform, including but not limited to all ways in which

16

Google makes Android Platform Source Code and Software Documentation available to such developers and the identity and location of any such Source Code and Software Documentation.

82.     The identity of individuals or entities to which Google provides information or instructions for third-party development of Java applications for the Android Platform, including all publicly available websites.

83.     All instructions, tutorials, how-to guides, and other instructional or educational resources regarding the development of Java applications for the Android Platform that Google offers publicly or privately.

84.     The identity of all Java applications for the Android Platform developed by third-party developers with Google's consent, knowledge, or assistance.

85.     The design, use, and operation of Java applications for the Android Platform developed by third-party developers with Google's consent, knowledge, or assistance.

86.     The identity of all Google personnel and any Entities involved in any aspect of the design, development, and maintenance of the Android Platform and each Motorola Accused Product, and their respective responsibilities.

17

### III.  Categories of Documents to be Produced

1.      Documents and Things sufficient show all communications between Google (or anyone acting on behalf of Google) and Motorola Solutions or Motorola Mobility (or anyone acting on behalf of Motorola Solutions or Motorola Mobility) regarding the Android Platform, the Motorola Accused Products any of the Apple Patents-in-Suit, Motorola Patents-in-Suit, or any litigation involving both Apple and Motorola, including but not limited to this action.

2.      Documents and Things sufficient to fully describe all communications between Google (or anyone acting on behalf of Google) and Motorola Solutions, Motorola Mobility (or anyone acting on behalf of Motorola Solutions or Motorola Mobility) regarding the Android Platform; the Motorola Accused Products; or Apple.

3.      Documents and Things sufficient to fully describe Google's involvement in the design of hardware, Software, or architecture of any Motorola Accused Products.

4.      Documents and things reflecting Google's first awareness of the Apple Patents-in-Suit.

5.      Documents and Things sufficient show all communications between Google and any Entity regarding the Apple Patents-in-Suit; any litigation between Apple and Motorola; or the features or functionalities of the Android Platform.

6.      Documents and Things sufficient to fully describe Google's involvement in conceiving, designing, developing, engineering, and manufacturing the Motorola Accused Products.

7.      Documents sufficient to show any agreement, contract, or understanding between Google and Motorola related to or concerning any Motorola Accused Product.

8.      For each Motorola Accused Product, all promotional and sales materials, planning and strategy Documents, focus group information, press releases, market analyses, analyst reports, and competitive analyses.

9.      For each Motorola Accused Product, all product literature, including but not limited to schematics, engineering drawings, product specifications, performance specifications, teardown specifications, operational manuals, service manuals, reference guides, and technical guides.

10.     Documents sufficient to show any plan or attempt to design any Motorola Accused Product or the Android Platform to avoid infringement of the Apple Patents-in-Suit.

11.     Documents and Things sufficient to fully describe , for each Motorola Accused Product, the existence and nature of any differences between the Open Source Android code available at http://source.android.com/source/download.html and the Android Platform Source Code provided by Google to Motorola.

12.     All Source Code and Software Documentation for each of the Motorola Accused Products, including but not limited to Android 1.5, 1.6, 2.1, 2.2, 2.3, and 3.0 and any proprietary Source Code.

13.     Any correspondence or materials exchanged with Motorola regarding the hardware and/or Software design or architecture of any Motorola Accused Products.

14.     All Source Code and Software Documentation that Google provides or has provided to Motorola.

15.     Any design specifications supplied to Motorola for any hardware or Software aspects of any Motorola Accused Products.

16.     Any hardware schematics and/or bills of materials supplied to Motorola for any Motorola Accused Products.

17.     Any technical specifications for any Motorola Accused Products or components thereof.

18.     Documents and Things sufficient to fully describe the development, use, and implementation of all process(es) and/or functionality(ies) in the Android Platform for locking and unlocking the touchscreen.

19.     Documents and Things sufficient to fully describe the development, use, and implementation of the process(es) and/or functionality(ies) in the Android Platform providing the use of customized title bars for the user.

20.     Documents and Things sufficient to fully describe the development, use, and implementation of the Notification Window feature in the Android Platform.

21.     Documents and Things sufficient to fully describe the development, use, and implementation of all frameworks or mechanisms for inter-process communications within the Android Platform, including but not limited to the Binder framework, the Binder driver, the Android Interface Definition Language ("AIDL"), and the AIDL compiler.

22.     Documents and things sufficient to fully describe Google's decision to utilize the Binder framework, the Binder driver, the AIDL, and the AIDL compiler in the Android Platform, including any technical or commercial reasons for such a decision, and the basis for Google's decision to include the Binder framework in the Android Platform.

23.     Documents and things sufficient to fully describe any enhancements or modifications made by Google to the Standard Linux Kernel that relate to or are used to support inter-process communication, including any enhancements or modifications related to the Binder framework.

24.     Documents and Things sufficient to fully describe the development, use, and implementation of the process(es) and/or functionality(ies) by which object-oriented classes in the Android Platform send commands to and/or receive commands from the Dalvik Virtual Machine, whether directly or indirectly.

25.     The development, use, and implementation of any Software Modules in the Android Platform that are used to implement any dynamic linking, dynamic loading, dynamic binding, deferred linking, deferred loading, deferred binding, and/or just-in-time loading functionality.

26.     Documents and Things sufficient to fully describe the development, use, and implementation of the process(es) and/or functionality(ies) by which the Android Platform

20

determines whether or not Java objects are present in executable memory, including but not limited to executable memory such as Random Access Memory ("RAM"), prior to invoking those objects.

27.     Documents and Things sufficient to fully describe the development, use, and implementation of the process(es) and/or functionality(ies) in the Android Platform by which a user may subscribe to notifications from events (or "Intents,") when those events are created or detected.

28.     Documents and Things sufficient to fully describe the development, use, and implementation of the process(es) and/or functionality(ies) in the messaging applications in the Android Platform, including but not limited to the Gmail, Email, text messaging, instant messaging, and multimedia messaging service (MMS) applications, which, upon user selection of data structures such as telephone numbers, e-mail addresses, physical addresses, and Internet URLs (for example, selection by tapping the screen area corresponding to the data structure with one's finger), provide a user with a menu of options including available activities or functions to perform on or using those data structures.

29.     Documents and things sufficient to fully describe each process, application, service, or software in the Android Platform or created by Google for any Motorola Accused Product that provides notifications, updates, events, or instructions to other processes or applications for controlling a user interface display, including the identity, design, use, and operation of the processes or applications that receive the notifications, updates, events, or instructions or otherwise create, interact with, implement, or use the Identified Background Service.

30.     Documents and Things sufficient to fully describe the development, use, and implementation of the process(es) and/or functionality(ies) in the Google Talk application in the Android Platform by which the Talk application sends messages, commands, or any other communications to the GTalk service.

31.    Documents and Things sufficient to fully describe the development, use, and implementation of the process(es) and/or functionality(ies) in the Google Talk application in the Android Platform by which the GTalk service performs processes that affect, directly or indirectly, the Google Talk application.

32.    Documents and Things sufficient to fully describe the development, use, and implementation of the process(es) and/or functionality(ies) in the Google Talk application in the Android Platform by which the Google Talk application performs processes that affect, directly or indirectly, the GTalk service.

33.    Documents and Things sufficient to fully describe the development, use, and implementation of the process(es) and/or functionality(ies) in the Google Talk application in the Android Platform by which the GTalk service sends messages, commands, or other communications to the Google Talk application.

34.    Documents and things sufficient to fully describe all Software Modules within any Android Platform source code, including but not limited to those that contain native functions, that enable applications to: (i) create or spawn new threads; (ii) control threads; (iii) obtain information relating to a thread; (iv) reference a task; (v) control a task; (vi) schedule a thread; (vii) synchronize a thread; and (viii) terminate a thread.

35.    Documents and Things sufficient to fully describe the development, use, and implementation of the following Java objects in the Android Platform including, but not limited to, their capability to communicate calls to hardware devices used for graphics output in the Motorola Accused Products:  SkDraw object; Canvas object; and Drawable object.

36.    Documents and Things sufficient to fully describe the development, use, and implementation of software, firmware, or other source code used to implement any of the following applications: Android Market (and supporting services), Amazon MP3, Blockbuster, Email, Gmail, Calendar, Browser, Photo Gallery, Kindle, News, News and Weather, Skype Mobile, Social Networking, Talk, YouTube, Weather AppWidget, and Music Player.

37.     Documents and Things sufficient to fully describe, for each version of the Android Platform, the relationship and/or interactions between any one or more of the following classes and any codec with which that class can and/or does interact:  MediaPlayer, MediaRecorder, Audio, Surface, SurfaceFlinger, WindowManagerService, Camera, AudioFlinger, AudioHardwareInterface, or AudioPolicyManager.

38.     Documents and Things sufficient to fully describe, for each Motorola Accused Product, the design, implementation, operation, and use of the Android Media Framework.

39.     Documents and Things sufficient to fully describe, for each version of the Android Platform, any Software provided by and/or originating from PacketVideo Corporation that is contained, included, and/or used in that version.

40.     Documents and Things sufficient to fully describe, for each version of the Android Platform, the implementation and/or use of the Media I/O (MIO) component.

41.     Documents and Things sufficient to fully describe, for each version of the Android Platform, the implementation and/or use of the OpenMax Framework.

42.     Documents and Things sufficient to fully describe, for each version of the Android Platform, how the Media Framework is "Based on [the] PacketVideo OpenCORE platform, " as described, for example in "Android Anatomy and Physiology, " androidteam.googlecode.com/files/Anatomy-Physiology-of-an-Android.pdf, at 42.

43.     Documents and Things sufficient to fully describe, for each version of the Android Platform, how the Media Framework includes "Support for hardware / software codec plug-ins," as described, for example, in "Android Anatomy and Physiology," androidteam.googlecode.com/files/Anatomy- Physiology-of-an-Android.pdf, at 42.

44.     Documents and Things sufficient to fully describe, for each version of the Android Platform,

45.     Documents and Things sufficient to fully describe, for each version of the Android Platform, any sequence diagrams (including UML sequence diagrams) and/or UML

23

diagrams, that depict and/or include the classes MediaPlayer, Audio, MediaRecorder, PVMediaPlayer, PVMediaRecorder, AndroidSurfaceOutput, PVRefFileOutput, PVFMAudioMIO, or PVFMVideoMIO.

46.     Documents and Things sufficient to fully describe, for each version of the Android Platform, each and every codec with which any one or more of the following classes can and/or does interact: MediaPlayer, MediaRecorder, Audio, PVPlayer, and PVMediaRecorder.

47.     Documents and Things sufficient to fully describe, for each version of the Android Platform, any and all compatibility definition(s), including but not limited to Documents such as the "Android 2.1 Compatibility Definition," as found, for example, at http://source.android.com/compatibility/android-2.1-cdd.pdf.

48.     Documents and Things sufficient to fully describe, for each version of the Android Platform, the implementation and/or use of the Stagefright Multimedia Framework, including but not limited to Stagefright Player and AwesomePlayer, along with each and every codec that can or does interact with the Stagefright Media Framework.

49.     Documents and Things sufficient to fully describe, for each Motorola Accused Product, the development, use, and implementation of the Android java.net package, including but not limited to:  URLStreamhandler; URLConnection; HttpURLConnection; HttpsURLConnection; and JarURLConnection.

50.     Documents and Things sufficient to fully describe, for each Motorola Accused Product, the development, use, and implementation of: Software Modules that provide access to remote network resources, application programming interfaces that facilitate access to remote network resources; Software Modules for viewing and/or editing network resource.

51.     Documents and Things sufficient to fully describe, for each Motorola Accused Product, the development, use, and implementation of any software classes that represent or implement network resources in the Motorola Accused Products or that facilitate

24

communication between applications and Software Modules that provide access to a data network.

52.     Documents and Things sufficient to fully describe, for each Motorola Accused Product, the development, use, and implementation of any software classes that represent or implement network resources in the Motorola Accused Products.

53.     Any Documents or Things sufficient to fully describe, for each Motorola Accused Product, the development, use, and implementation of the layered structure of the Android Platform, including the Applications, Application Framework, Libraries, Android Runtime, and Android Kernel.

54.     Documents and Things sufficient to fully describe, for each Motorola Accused Product, the development, use, and implementation of the following classes as well as their equivalent classes (if any) included in each version of the Android Platform; MediaPlayer class; MediaRecorder class; Audio Class; Surface class; SurfaceFlinger class; WindowManagerService class; Camera class; AudioFlinger class; AudioHardwareInterface class; or AudioPolicyManager class.

55.     Documents and Things sufficient to fully describe, for each Motorola Accused Product, the development, use, and implementation of the App Widget in the Android Platform.

56.     Documents and Things sufficient to fully describe, for each Motorola Accused Product, the identity, design, use, and operation of the applications Installed By Default that provide App Widgets.

57.     Documents and Things sufficient to fully describe, for each Motorola Accused Product, the identity, design, use, and operation of the home screen application, including but not limited to functionality allowing a user to save links to internet resources on the home screen or Software Modules enabling objects representing remote network resources to be saved as graphical entities.

58.     Documents and Things sufficient to fully describe any use of digital signal processors by any and all of the Android Platform's multimedia framework and multimedia applications.

59.     Documents and Things sufficient to fully describe , for each Motorola Accused Product, the development, use, and implementation of the hardware that performs real-time signal processing operations, such as data transforms.

60.     Documents and Things sufficient to fully describe, for each Motorola Accused Product, the development, use, and implementation of the Software Modules whose purpose or effect is to abstract application Software from a real-time signal processor implementation.

61.     Documents and Things sufficient to fully describe, for each Motorola Accused Product, the development, use, and implementation of the driver Software for any real-time data input/output hardware.

62.     Documents and Things sufficient to fully describe, for each Motorola Accused Product, the development, use, and implementation of the Software Modules or hardware that constitute an adapter between applications and any real-time data input/output hardware.

63.     Documents and Things sufficient to fully describe the development, use, and implementation of the software, firmware, or other source code used to implement (i) the services of audio processing and video processing, including but not limited to streaming audio, streaming video, and video conferencing; and (ii) the services of communicating audio data and video data over the Internet, including without limitation to and from a WiFi modem or 3G/4G modem, such as the driver software for the WiFi modem and the driver software for the 3G/4G modem.

64.     Documents and Things sufficient to fully describe the development, use, and implementation of the streaming audio, streaming video, and video conferencing functionalities in the Android Platform present on the Motorola Accused Products.

65.     Documents and Things sufficient to fully describe the development, use, and implementation of the streaming audio, streaming video, and video conferencing functionalities of the Android Platform, including but not limited to the datapath for sending audio, video, and video conferencing data to and from a data source and a real-time signal processor, such as a digital signal processor, including but not limited to Software Modules and multimedia applications that access the real-time signal processor.

66.     Documents and Things sufficient to fully describe testing within the United States of the Android Platform on the Motorola Accused Products.

67.     Documents and Things sufficient to fully describe testing within the United States of Java applications that access operating system services on the Motorola Accused Products in the United States.

68.     Documents and Things sufficient to show the identity of all Java applications developed by Google that are Installed By Default on the Motorola Accused Products.

69.     Documents and Things sufficient to fully describe the design, use, and operation of all Java applications developed by Google that are Installed By Default on the Motorola Accused Products.

70.     Documents and Things sufficient to fully describe Google's advertisement or dissemination of information regarding Java applications developed by Google that are Installed By Default on the Motorola Accused Products.

71.     Documents and Things sufficient to show the identity of all Java applications developed by Google that are available for download onto the Motorola Accused Products.

72.     Documents and Things sufficient to fully describe the design, use, and operation of all Java applications developed by Google that are available for download onto the Motorola Accused Products.

73.     Documents and Things sufficient to fully describe the way in which Google makes Java applications developed by Google available for download onto the Motorola Accused Products, including all websites where such applications are available for download.

74.     Documents and Things sufficient to show the number of times that Java applications developed by Google for the Motorola Accused Products have been downloaded from the websites where such applications are available for download, including the number of downloads that occurred within the United States.

75.     Documents and Things sufficient to fully describe Google's advertisement or dissemination of information regarding Java applications that are available for download onto the Motorola Accused Products, including advertisements and other literature regarding the availability of said Java applications for download onto the Motorola Accused Products and including instructions provided to end users about the download, installation, and use of said Java applications.

76.     Documents and Things sufficient to fully describe Google's provision of information or instructions to third-party developers of Java applications for the Android Platform, including but not limited to all ways in which Google makes Android Platform Source Code and Software Documentation available to such developers and the identity and location of any such Source Code and Software Documentation.

77.     Documents and Things sufficient to show the identity of individuals or entities to which Google provides information or instructions for third-party development of Java applications for the Android Platform, including all publicly available websites.

78.     All instructions, tutorials, how-to guides, and other instructional or educational resources regarding the development of Java applications for the Android Platform that Google offers publicly or privately.

79.     Documents and Things sufficient to show the identity of all Java applications for the Android Platform developed by third-party developers with Google's consent, knowledge, or assistance.

80.     Documents and Things sufficient to fully describe the design, use, and operation of Java applications for the Android Platform developed by third-party developers with Google's consent, knowledge, or assistance.