# EXHIBIT 4

**Issued by the**
# UNITED STATES DISTRICT COURT
**Northern District of California**

| | |
|---|---|
| Apple Inc. and NeXT Software Inc. (f/k/a/ NeXT Computer, Inc.), <br><br> Plaintiffs, <br> vs. <br><br> Motorola, Inc. and Motorola Mobility, Inc., <br><br> Defendants. | § § § § § § § § § <br> **SUBPOENA IN A CIVIL CASE** <br> Civil Action No. 10-CV-662 (BBC) <br> Pending in Other Jurisdiction: <br> U.S.D.C. – Western District of Wisconsin |

TO:
Google Inc.
c/o Corporate Legal Department
1600 Amphitheatre Parkway
Mountain View, CA 94043

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case pursuant to Rule 30(b)(1) of the Fed. R. Civ. P. The deposition will be recorded by video and stenographic means.

| PLACE OF DEPOSITION <br> Weil, Gotshal & Manges, LLP, <br> 201 Redwood Shores Parkway, Redwood Shores, CA 94065 | DATE AND TIME <br> September 15, 2011 <br> 9:00 a.m. |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below: **See Exhibit A**

| PLACE <br> Weil, Gotshal & Manges, LLP, c/o Jill J Ho, <br> 201 Redwood Shores Parkway, Redwood Shores, CA 94065 | DATE AND TIME <br> September 11, 2011 <br> 9:00 a.m. |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure. 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE <br> *[signature]* <br> ATTORNEY FOR PLAINTIFFS APPLE INC. AND NEXT SOFTWARE INC. | DATE <br> August 22, 2011 |
|---|---|
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER <br> Christine S. Haskett <br> Covington & Burling LLP, One Front Street, San Francisco, CA 94111 <br> (415) 591-6000 | |

SD: 7922-2

## PROOF OF SERVICE

| DATE | PLACE |
|---|---|
| SERVED | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED ON (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:
(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
  (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
  (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
  (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
  (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
    (i) fails to allow reasonable time for compliance;
    (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause ©(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
    (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) If a subpoena
    (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
    ' (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
    (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.
(d) DUTIES IN RESPONDING TO SUBPOENA.
  (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
  (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
  (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
  (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
  (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
   (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.
(e) CONTEMPT.
Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

2

# EXHIBIT A TO GOOGLE INC.'S SUBPOENA

## I. Definitions and Instructions

The following definitions and instructions shall apply to these requests:

1. The terms "You," "Your," or "Google" shall mean Google Inc. and RB98 Inc., and any and all past and present parent, sister, affiliate, subsidiary, partnership, joint venture, predecessor-in-interest, successor-in-interest, division, department, corporate subunit, or other business entity; and any and all past and present officers, directors agents, employees, consultants, attorneys, and other persons or entities acting or purporting to act on behalf of any of the foregoing.

2. The term "Apple" shall mean Apple Inc. and its predecessor, Apple Computer Inc., and including without limitation all of its corporate locations, and all predecessors, subsidiaries, parents, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint-venture or partnership relationships with Apple, and others acting on behalf of Apple.

3. The term "Motorola Solutions" is defined to mean and refer to Motorola Solutions, Inc. and all of its corporate locations, and all predecessors, subsidiaries, parents, and affiliates, including without limitation Motorola, Inc., the Mobile Devices segment of Motorola, Inc., and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint-venture or partnership relationships with the aforementioned entities, and others acting on their behalf.

4. The term "Motorola Mobility" shall mean and refer to Motorola Mobility, Inc. and all of its corporate locations, and all predecessors, subsidiaries, parents, and affiliates, including without limitation Motorola SpinCo Holdings Corp., and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint-venture or partnership relationships with the aforementioned entities, and others acting on their behalf.

1

5. The term "Motorola Accused Product(s)" shall mean all electronic mobile devices, such as smartphones, and associated software, including operating systems, user interfaces, and other application software designed for use on, and loaded onto, such devices that are designed, made, used, developed, researched, tested, sold, offered for sale, manufactured, or imported by or at the direction of Motorola including but not limited to: the Motorola Atrix, BackFlip, Bravo, Charm, Cliq, Cliq XT, Cliq 2, Defy, Devour A555, Droid, Droid 2, Droid 2 Global, Droid X, Droid Pro, Flipout, Flipside, i1, and Xoom.

6. The term "Android Platform" shall mean any and all versions of the Android Platform included on or used by any of the Motorola Accused Products, including but not limited to version 1.0, version 1.5, version 1.6, version 2.0, version 2.1, version 2.2, version 2.3, and version 3.0.

7. The term "Software" means all forms of code, including Source Code, object code, firmware, compiled code, byte code, interpreted code, any form of code stored in any storage.

8. The term "Software Module" means a logical grouping of Source Code, including but not limited to frameworks, libraries, application programming interfaces, layers, components, and services.

9. The term "Installed By Default" means that the particular referenced Software is installed on a product prior to the importation of that product into the United States.

10. The term "action" is defined to mean the above-captioned case pending before the United States District Court for the Western District of Wisconsin, entitled *Apple Inc. v. Motorola, Inc. and Motorola Mobility, Inc.*, Case No. 10-CV-662 (BBC).

11. The term "Apple Patent(s)-in-Suit" shall mean, individually and collectively, U.S. Patent Nos. 7,479,949, 6,493,002, 5,838,315, RE 39,486, 6,424,354, 6,343,263, 6,275,983, 5,969,705, 5,946,647, 5,929,852, 5,915,131, 5,566,337, 5,519,867, 5,481,721, and 5,455,599.

12. The term "Motorola Patent(s)-in-Suit" shall mean, individually and collectively, U.S. Patent Nos. 5,311,516, 5,319,712, 5,490,230, 5,572,193, 6,175,559, and 6,359,898.

13. The term "Motorola Mobility Holdings" shall mean Motorola Mobility Holdings, Inc., and including without limitation all of its corporate locations, and all predecessors, subsidiaries, parents, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint-venture or partnership relationships with Motorola Mobility Holdings, and others acting on behalf of Motorola Mobility Holdings.

14. The term "Agreement and Plan of Merger" shall mean the Agreement and Plan of Merger by and among Google Inc., RB98 Inc. and Motorola Mobility Holdings, Inc., dated August 15, 2011, and available at:
http://www.sec.gov/Archives/edgar/data/1495569/000119312511225807/dex21.htm

15. The term "all" shall mean "any and all," so as to bring within the scope of the requests herein all documents and things that otherwise might be construed to be outside its scope.

16. The terms "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a request all information that might otherwise be construed to be outside its scope

17. The terms "any" or "each" should be understood to include and encompass "all."

18. The terms "communication" and "correspondence" are used in a comprehensive sense, and mean, refer to, and include any instance in which any person has had contact with any other person including by any oral or written utterance, question, comment, inquiry, notation, or statement of any nature whatsoever, by and to whomsoever made, including (but not limited to) writings, documents, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and understandings.

3

19. The terms "concern," "concerning," "evidencing," "relating to," "relate," "relates to," "related to," "referring or relating to," "referring to," "regarding," "comprising," "comprise," and "refer or relate to" mean, in whole or in any part, alluding to, responding to, concerning, relating to, connected with, involving, commenting on, in respect of, about, associated with, discussing, evidencing, showing, describing, reflecting, analyzing, summarizing, memorializing, consisting of, constituting, identifying, stating, tending to support, tending to discredit, referring to, or in any way touching upon.

20. The terms "Document" and "Documents" shall be construed under the broadest construction under the Federal Rules of Civil Procedure, and shall include any reduction of communication, information, or data to tangible form, including computer or magnetic memory or storage, and any written, recorded, or filmed graphic matter of any kind or nature, however produced or reproduced, including originals, drafts, or non-identical copies, wherever located. The term "documents" shall include (but is not limited to) books, contracts, agreements, correspondence, computer tapes, discs, printouts, keypunch cards, e-mail entries, memoranda, diaries, notes, reports, bulletins, printed forms, telegraphic communications, pleadings and other legal papers, notes, telexes, telegrams, telecopies, facsimile reproductions or "faxes," factual compilations, data compilations, statistical compilations, plans, diagrams, journals, change orders, studies, surveys, sketches, art work, graphics, checks ledgers, catalogues, brochures, pamphlets, press releases, advertisements, invoices, minutes, photographs, microfilms, microfiche, films, personnel files, quotes, stenographic notes, computer discs, telephone records, schedules, bids, voice recordings, transcriptions, and television commercial photoboards. This definition shall apply to all documents on the particular subject in your possession, custody, or control, or that of your attorneys, agents, employees, officers, directors, or representatives, irrespective of who generated, prepared, or signed the documents. The term "document" or "documents" shall also include all attachments, appendices and enclosures to the document.

21. The term "Thing" shall be construed under the broadest possible construction under the Federal Rules of Civil Procedure.

22. The terms "or" and "including," and similar words of guidance, are merely intended as guidance and should not be construed as words of limitation; the word "or," for example, shall include the word "and," as appropriate, and the word "including" shall not be used to limit any general category description that precedes it.

23. The term "person" means, refers to, and includes any natural individual in any capacity whatsoever, and all entities of every description, including but not limited to, associations, organizations, companies, partnerships, joint ventures, corporations, trusts, and estates, and all divisions, departments, and other such units thereof or therein.

24. You are required to respond to these requests for production drawing upon all materials in your actual or constructive possession, custody, or control, including materials that you have a right to secure from any other source. These sources include (but are not limited to) your attorneys, agents, officers, and employees.

25. In the event that you make a proper and timely objection to any individual document production request or a portion thereof, please respond to all portions of that request that do not fall within the ambit of your objection.

26. Documents from any single file should be produced in the same order they were found in such file. If copies of documents are produced in lieu of the originals, such copies should be legible and bound or stapled in the same manner as the original.

27. For any document request that is objected to on the ground of privilege, the work product doctrine or any other purported privilege or immunity from discovery or right of privacy, please provide the following information: (a) the basis for the objection sufficient to establish the privilege or doctrine asserted; (b) a brief identification and description of the withheld document, to the extent it can be done without violating such privilege or doctrine, including:

    (i)    the type of document (*e.g.*, letter, memorandum, notes, reports, etc.);

    (ii)    date;

      (iii)  title;

      (iv)  subject matter;

      (v)  name(s) of author or signer; and

      (vi)  name(s) of all recipients.

  28.  If you object that a term or phrase is vague, ambiguous, or indefinite then provide your understanding of the term or phrase and respond accordingly.

  29.  These requests include all attachments to the specifically described documents, along with envelopes, explanatory notes, memoranda and all other such material that accompanied the document. If the specific document requested elicited a response, that response is included in the category of requested documents. If the document itself was a response, the document to which it is responding is included in the category of requested documents.

  30.  The past tense shall be construed as the present tense or the future tense, and the future tense as the present or past tense, so as to bring within the scope of the requests herein all documents or writings that might otherwise be construed to be outside the scope.

6

## II.  Topics for Examination

1. The Person(s) involved in and most knowledgeable about the purchase, acquisition and/or value of Motorola Mobility Holdings or any portion or assets thereof.

2. The Person(s) involved in and most knowledgeable about the negotiation for the purchase, acquisition and/or value of Motorola Mobility Holdings or any portion or assets thereof.

3. The purchase, acquisition and/or value of Motorola Mobility Holdings or any portion or assets thereof.

4. The negotiation for the purchase, acquisition and/or value of Motorola Mobility Holdings or any portion or assets thereof.

5. The Agreement and Plan of Merger, including but not limited to, Sections 3.14(f), 5.01(j), 5.01(v), and 5.01(w), and any negotiations and communications relating thereto

6. Communications between You and any Person, including but not limited to Motorola Mobility and/or Motorola Mobility Holdings, concerning the purchase, acquisition and/or value of Motorola Mobility Holdings or any portion or assets thereof

7. Communications between You and any Person, including but not limited to Motorola Mobility and/or Motorola Mobility Holdings, concerning the Motorola Patents-in-Suit and the action.

8. Communications between You and any Person, including but not limited to Motorola Mobility and/or Motorola Mobility Holdings concerning the actual or potential value of the Motorola Patents-in-Suit.

9. Communications between You and any Person, including but not limited to Motorola Mobility and/or Motorola Mobility Holdings, concerning the potential or actual assignment of the Motorola Patents-in-Suit.

10. Communications between You and any Person, including but not limited to Motorola Mobility and/or Motorola Mobility Holdings, concerning the Agreement and Plan of Merger.

8

11. Statements that Google plans to use Motorola Mobility's patent portfolio, including but not limited to the Motorola Patents-in-Suit, to protect its Android operating system and manufacturers of handsets based on the Android operating system, and all communications between or within Motorola Mobility, Motorola Mobility Holdings, or Google relating to those statements.

12. Communications and documents relating to Your post-merger plans and strategies for the business, assets, and intellectual property of Motorola Mobility and/or Motorola Mobility Holdings.

13. Communications with government regulators and/or agencies, of the United States or other foreign countries, relating to the Agreement and Plan of Merger.

14. All documents relating to or identified in the Agreement and Plan of Merger, including but not limited to the "Disclosure Letter" identified in Article III of the Agreement and Plan of Merger and any documents required under the Hart-Scott-Rodino Antitrust Improvements Act ("HSR Act").

## III. Categories of Documents to be Produced

1. All documents relating to or reflecting the purchase, acquisition and/or value of Motorola Mobility Holdings or any portion or assets thereof

2. All documents relating to or reflecting the negotiation for the purchase, acquisition and/or value of Motorola Mobility Holdings or any portion or assets thereof.

3. All documents relating to internal meetings, including but not limited to all meeting minutes of the Board of Directors, relating to the purchase, acquisition and/or value of Motorola Mobility Holdings or any portion or assets thereof.

4. All communications with third parties, including but not limited to Motorola Mobility and/or Motorola Mobility Holdings, relating to or reflecting the purchase, acquisition and/or value of Motorola Mobility Holdings or any portion or assets thereof.

5. All documents relating to or reflecting the actual or potential value of the Motorola Patents-in-Suit.

6. All documents relating to or reflecting the potential or actual assignment of the Motorola Patents-in-Suit

7. All documents relating to the Motorola Patents-in-Suit and this action.

8. All documents relating to or identified in the Agreement and Plan of Merger, including but not limited to the "Disclosure Letter" identified in Article III of the Agreement and Plan of Merger and any documents required under the Hart-Scott-Rodino Antitrust Improvements Act ("HSR Act").

9. All documents relating to Sections 3.14(f), 5.01(j), 5.01(v) and 5.01(w) of the Agreement and Plan of Merger, including but not limited to documents relating to the negotiation of the provision or communications relating to the provision

10. All communications and documents relating to Your statements that You will use Motorola Mobility's patent portfolio, including but not limited to the Motorola Patents-

in-Suit, to protect the Android operating system and manufacturers of handsets based on the Android operating system.

11. All communications and documents relating to Your post-merger plans and strategies for the business, assets, and intellectual property of Motorola Mobility and/or Motorola Mobility Holdings.

12. All communications with government regulators and/or agencies, of the United States or other foreign countries, relating to the Agreement and Plan of Merger.