June 11, 2012

# JURY INSTRUCTIONS

## INTRODUCTORY INSTRUCTIONS

1.1

    **Introduction** - This case involves four patents, called '002, '263, '647, and '949 (each patent actually has a longer number, but for convenience we'll use just the last three digits of each number). Each is a patent on computer technology related to "smartphones," cell phones that are also small computers, and "tablet computers," small, portable computers with touchscreens. These devices are used to play music, browse the web, send email, and so on—and in the case of smartphones, to make phone calls. Each of the four patents relates to a different component of these mobile devices, and the technologies will be explained at trial.

    I'm going to give you some preliminary instructions to orient you to the case. I'll give you more detailed instructions later, when the trial is over and you are about to consider what your verdict will be.

    Patents are issued by the United States Patent and Trademark Office and are intended to encourage the development of new technologies and inventions by giving anyone who comes up with such an invention—the inventor—the right to prevent anyone else from making, using, selling, or offering to sell his patented invention, except with the inventor's permission, for about twenty years. The idea is to enable the inventor to make money off of his invention, which encourages inventors. Without patents, an inventor might not be able to make much money off of an invention because others could copy the invention and he would have no way of stopping them. If someone else does make, use, sell, or offer to sell a patented invention without the inventor's permission—or as it's said in patent law, "infringes the patent"—the owner of the patent can sue the alleged violator (the "infringer") in federal court. If the inventor wins, the defendant may be forced to stop infringing the patent or to pay the inventor for having infringed. However, even if the defendant did infringe the patent, the defendant can still win the case if he can prove that the patent was "invalid," meaning the Patent and Trademark Office made a mistake in issuing it. Both infringement and validity are issues in this lawsuit, as I'll explain.

    The parties to this lawsuit are two companies that sell electronic devices: Apple and Motorola. Apple is the plaintiff and Motorola is the defendant. Apple owns the four patents, and Motorola sells smartphones and tablet computers that Apple says infringe its patents.

1.2     **Representative Products –** Apple alleges that many different Motorola products infringe the four patents at issue in this trial. Rather than discuss every single device, the parties have agreed to focus on specific ones that are representative of the rest. You are to consider whether each representative device infringes Apple's patent according to the following list:

      **'647 Patent:** Xoom; Droid X (browser); Droid X (Motorola messaging); Droid; Droid 3.
      **'263 Patent:** Xoom; Droid; Droid2; Droid X2
      **'002 Patent:** Droid Pro; Droid X; Photon
      **'949 Patent:** Droid X

1.3

      **Trial Order -** Each of Apple's four patents relates to a different technology. For each patent, you must consider whether it is invalid and whether Motorola's products infringe it. You should consider the validity and infringement of each patent separately. The trial will go patent by patent in this order: '647, '263, '002, '949.

1.4

      **Court-Appointed Witnesses -** The court has appointed Professors Steve McLaughlin and David Culler, both engineering professors at top universities, to help explain the technologies at issue in this case. These witnesses are not affiliated with either Apple or Motorola, and have no stake in the outcome of the case. They are here simply to help you reach a more informed decision. For each patent, either McLaughlin or Culler will give a short presentation explaining the technology. Then Apple and Motorola will present their arguments, which will include testimony by additional witnesses about whether the given Apple patent is invalid and whether Motorola's smartphones and tablets infringe it. Finally McLaughlin or Culler will interpret Apple's and Motorola's arguments and offer their own opinions about infringement and validity.

1.5

      **Infringement -** The invention protected by a patent is described in the section of the patent labeled "patent claims." The claims are set forth in separately numbered paragraphs at the end of the patent. Although each of Apple's patents has many claims, Apple is only arguing that Motorola's products infringe a few claims of each patent. Each claim is further made up of "elements," which are the individual components of the invention described in the claim. For example, a patent on a new type of lamp would have elements such as a light bulb, an electrical cord, a lampshade, and so on. A claim in a valid patent gives its inventor only the right to stop others from making, using, selling, or offering to sell a device that has *all* of the elements described in the claim, or elements that are equivalent to all of those elements. A patent is not infringed by a

device that is similar to the patented invention unless that device contains every element described by the patent claim, or equivalents to those elements.

For that reason, when a product (in this case, Motorola's products) is accused of infringing a patent, the patent claims must be compared to the product very closely. To prove infringement, Apple (who is the owner of the patent) must prove that every element in one of the patent's claims is found in Motorola's product, whether as an exact duplicate of the element or as being "equivalent" to it, meaning that a person of "ordinary skill" in the relevant field of technology would have considered the differences between them to be insubstantial. (A person of "ordinary skill" in the technological field to which the patented invention belongs is a person who has the education and experience necessary for a competent understanding of the technology described in the patent. He doesn't have to be a genius, but for complicated technologies he may need to have studied that type of technology in college and work with that technology for a number of years before reaching the level of "ordinary skill.") Any difference is insubstantial if, for each element of the patented claims, a feature of Motorola's product performs substantially the same function and works in substantially the same way to achieve substantially the same result as that element. One factor you may consider in making that determination is whether a person of ordinary skill (as I've just defined it) would have regarded an aspect of Motorola's product to be interchangeable with the element of the claim.

When deciding infringement, you will compare the patent claims to Motorola's products. You should consider only the aspects of the devices related to those patent claims. You must not consider other similarities or differences between Motorola's products and Apple's products.

For Apple to prove infringement of any patent at issue in this case, it must convince you that its position is more likely true than false.

1.6

**Willful infringement -** Apple contends not only that Motorola infringed its four patents, but that it did so "willfully." To prove this, Apple must prove by "clear and convincing evidence" that it was highly likely that the Motorola's product infringed and that Motorola either knew that it was highly likely or should have known that its product infringed the patent.

"Clear and convincing evidence" means evidence that convinces you that it is highly likely that the proposition is true. You must first decide whether there was simple infringement, under the lower standard of proof that I mentioned in section 1.4, and if you find that there was, you should go on to decide whether the infringement was willful under the higher "clear and convincing evidence" standard of proof.

**Induced Infringement –** Sometimes a party can be held liable for infringement that is actually committed by another person. One way is by "inducing" others to infringe. For one of its patents, '002, Apple contends that Motorola induced Motorola customers to infringe Apple's patent. To prove inducement, Apple must show that Motorola (1) knew about the '002 patent, (2) instructed its customers to use its products in a way that infringed the patent, and (3) knew or should have known that its acts would cause its customers to infringe the patent.

1.7
**Validity -** To be entitled to patent protection, an invention must be new, useful, and nonobvious. If the Patent and Trademark Office gives someone a patent for an invention that does not meet all three of these requirements, then the Patent and Trademark Office has made a mistake and the patent (or the particular claim of the patent that fails to meet those requirements) is invalid. Motorola contends that all of the claims that Apple says are infringed are in fact invalid. Because the Patent and Trademark Office has considered these requirements in making the decision to issue patents, the law presumes that patents are valid. But a court can decide that the presumption is incorrect and invalidate a patent or a particular claim in a patent. To succeed with its claim of invalidity, Motorola must prove invalidity by clear and convincing evidence. In can prove invalidity in the following ways:

**Obviousness -** A patent claim is invalid if the invention claimed is obvious. An invention is obvious if a person who had ordinary skill in the technology relevant to the invention and was aware of the "prior art" already existing at the time of the invention would have come up with the invention at that time, or in other words would have viewed the invention as obvious. ("Prior art" is just patent speak for what was already known in the relevant field when the patented technology was invented. It is the same as prior technology, which is the term I will use throughout these instructions.)

When deciding obviousness, you should ask not whether it would seem obvious to a person of ordinary skill in the field *today*, but whether it would have been obvious at the time the patented technology was invented. In other words, you should not use hindsight.

**Anticipation -** A patent claim is also invalid if all of its elements were already contained in an existing invention—in other words it had already been invented—even if the new patentee didn't know about the earlier invention.

**Other Bases for Determining Invalidity –** A patent claim is also invalid if the patentee fails to sufficiently describe his invention in the patent "specification" (the written description of the invention, which precedes the claims). The specification must

describe each and every requirement of the patent claim, and must also contain enough information to enable one skilled in the technology to understand the patented invention without unreasonable experimenting (viewed at the time of invention—again, no hindsight). If Motorola proves that the specification is deficient on either basis, the patent claim is invalid.

1.8

**The Jury's Role -** The jury's job is to determine the facts relating to the legal issues. I will tell you what the law is and you'll apply the law to the facts to determine which side wins. Nothing I say during the trial is intended to indicate what I think the facts are or your verdict should be. You're the decision makers; I'm the traffic cop. Although this is a civil case rather than a criminal case, it is very important to the parties. They and I expect you to make a careful, thoughtful, conscientious decision, bearing in mind the importance of the case to the parties. The parties are companies rather than individuals, but they have legal rights just as individuals do and are entitled to the same consideration that you would give a case between individuals.

1.9

**Evidence -** The evidence you'll be hearing or reading consists of testimony of witnesses, documents admitted into evidence as exhibits, and any facts that the lawyers agree to or that I may instruct you to accept as being true. The exhibits are in binders, one from each side, which you will be given momentarily.

The parties may present the testimony of a witness by reading from a deposition transcript or by playing a videotape of the witness's deposition testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had appeared in court.

Certain things are not evidence and must not be considered by you:
- Statements, arguments, and questions by lawyers.
- Objections to questions or exhibits. Lawyers are entitled to object to evidence that it would be inappropriate for the jury to consider, according to the Federal Rules of Evidence. If an objection is sustained, you should ignore the question or exhibit. If the objection is overruled, treat the answer or exhibit like any other.
- Testimony that I have excluded or told you to disregard.
- Anything you may see or hear outside the courtroom. You're to decide the case solely on the basis of the evidence presented in the courtroom. Information you may come across outside the courtroom, through online research, for example, is often incorrect or misleading and may have been written by someone with an interest in swaying your decision unfairly. We are not trying to hide information from you, just ensure that it is presented fairly and accurately, so if you have any questions about the issues in the case, please ask me.

- Certain exhibits that are called "demonstrative exhibits." These include models, diagrams, graphs, and sketches. Demonstrative exhibits may be shown to you but they are not themselves evidence; they're just visual aids to help you understand the case better.

In deciding whether any fact has been proved, you should consider all the evidence relating to the question regardless of which side introduced it. You should also decide how much of a witness's testimony to accept or reject. This includes the neutral, court-appointed witnesses. Just because they are not beholden to either party doesn't mean their testimony is necessarily entitled to more weight than other witnesses you will hear from.

1.10

**Jury Conduct –** As jurors it is your duty to follow these rules to make sure that the case is decided fairly:

You may not discuss the case among yourselves until the end of the case when you go to the jury room to deliberate and to decide on your verdict.

You may not talk to anyone (including family or friends) or make any public or online comments about this case until the trial has ended and you have been discharged as jurors. And any online comment really means *any* online comment: you may not post about the case on Facebook or Twitter or other websites, for example—even comments you may think are completely innocent and lacking in substance (not even "that Judge Posner is a really nice guy").

You may not read or listen to anything bearing on this case in any way, including things your friends or family may want to tell you, news stories, radio or television reports, or the Internet. You may not do any research online or conduct any other type of investigation of the case, the lawyers, the witnesses, or the companies that are involved. We are not trying to hide information from you, just ensure that it is presented fairly and accurately. (If you want information about any aspect of the case or the law, you can ask me either by sending a note to me via the courtroom deputy or by raising your hand.) If anyone tries to talk to you about the case, bring that to my attention promptly.

You may ask questions of the witnesses. If you want to ask a question of a witness, raise your hand and I'll ask you to ask me the question first, so that I can make sure that it's in a form that's proper for the witness to answer.

Keep an open mind while listening to and reading all the evidence. Don't form an opinion until all the evidence is in.

You've been given pads on which to make notes if you want, but leave the pads in the jury room at the end of each day, until you begin your deliberations with the other jurors. Try not to look at other jurors' notes; but if you inadvertently see them, don't let them influence you, because they may not be accurate.

1.11
    The trial will now begin. Each side will make an opening statement. That is not evidence, but just a sketch of what the party intends to prove. We will then move through the four patents. For each patent, one of the neutral witnesses will give a presentation, after which each side will question its witnesses, and the lawyers for the other side will cross-examine them, to try to bring out errors in their testimony. Then the neutral witness will testify, and the parties will cross-examine him. After all the witnesses have testified, the lawyers will present closing arguments. I will then give you final instructions, setting forth the law in somewhat greater detail than in these preliminary instructions, and you'll then go to the jury room with a copy of the instructions, your notes, and your evidence binders, to deliberate on your verdict.

# FINAL INSTRUCTIONS

2.1

Members of the jury, you've seen and heard all the evidence and arguments of the lawyers. Now it's your turn. You'll decide, on the basis of the evidence you've heard and read, what the facts are that relate to how the case should be decided, and you'll apply the law that I explain to you in these instructions to the facts to reach a verdict—the final determination of how the case will turn out. You must follow my legal instructions, even if you disagree with them, because they state the law, and you must apply the law, just like a judge.

Perform these duties fairly and impartially.

Nothing I say now, and nothing I said during the trial, is meant to indicate what I think the facts are or your verdict should be.

2.2

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations, which are agreements between both sides that certain facts are true. You should give the same consideration to testimony presented to you by video as you would if the witnesses had come to court and testified live.

2.3

These things are not evidence:
- Testimony or exhibits that I ordered stricken.
- Anything you saw or heard outside this courtroom.
- Questions to witnesses, and objections to questions by lawyers.
- The lawyers' opening statements and closing arguments.
- Any notes you took during the trial; they are just to help you remember things.

2.4

In determining whether any fact has been proved, you should consider all of the evidence relating to the question regardless of which side introduced it.

2.5

You must decide whether witnesses' testimony is accurate, in whole, in part, or not at all, and how much weight, if any, to give that testimony in resolving a factual issue. You shouldn't just count noses: the fact that one side presents more witnesses, testimony, or other evidence on an issue than the other side doesn't mean the first side is right.

When evaluating testimony, you may consider, among other things, the witness's manner while testifying, whether the witness's testimony is reasonable in light of other evidence you've heard, and any bias or interest the witness may have.

2.6

You have heard some opinions from witnesses who were called to testify because they have specialized knowledge. You should weigh their testimony in the same way that you weigh the testimony of any other witness. You are not required to accept an opinion of a witness who has specialized knowledge, but you must give such a witness's testimony the weight you think it deserves, considering the reasons the witness gave for the opinion, the witness's qualifications, and the other evidence in the case. This goes for the court-appointed witnesses, too.

2.7

**"Ordinary skill in the technology"**– Some infringement and invalidity issues in patent cases are determined by reference to a "person of ordinary skill in the art," which really means ordinary skill in the technology of the patent. It is up to you to decide the level of ordinary skill for each of the four asserted patents. When deciding on the level of ordinary skill, consider the sophistication of technology in the field, the types of problems encountered in the field, and the level of education and experience of those working in the field.

2.8

The issues you have to decide are:
1. whether Apple has proved that it is more likely than not that Motorola has infringed claims 1, 21 and 46 of the '002 patent; claim 1 of the '949 patent; claims 1 and 2 of the '263 patent; and claims 1 and 8 of the '647 patent;
2. whether Apple has proved that it is more likely than not that Motorola induced its customers to infringe claim 21 of the '002 patent;
3. only if you find infringement of any patent claim, whether Apple has proved by clear and convincing evidence that Motorola infringed that claim willfully; and
4. whether Motorola has proved by clear and convincing evidence that any of the claims is invalid.

2.9

A product infringes a patent if every element in a claim is found in Motorola's product. The patent claims are the numbered sentences at the end of each patent. While the patent also includes diagrams and text, known as the patent's "specification," that describe the invention or give examples of how it could be used, the claims are what define what the patent covers.

Each claim is treated as though it is a separate patented invention; Motorola doesn't need to have infringed every claim in a patent for you to find infringement, and indeed Apple has only argued that Motorola infringed a few claims of each patent. If Motorola infringed a single claim, then it has infringed Apple's patent.

2.10

**"Means-Plus-Function" Claims -** Some parts of a patent claim describe a "means" of doing something, rather than the part of the patented invention, or "structure," that actually performs the function. These are called "means-plus-function" claims.

Say, for example, that a patent describes a table with legs glued to the tabletop. One way to make a patent claim for the table is to describe the tabletop, four legs, and glue between the legs and the tabletop. But another way to claim this invention is to describe the tabletop and the legs, but use the phrase "means for securing the legs to the tabletop" instead of describing the glue. This would be a "means-plus-function" requirement. This alternative way of claiming an invention names the function performed by the invention, here a "means" for performing the "function" of securing the legs to the tabletop, rather than a structure: the glue.

The patent specification would have to make it clear to a person knowledgable about carpentry what exactly is securing the legs to the tabletop: in this case, glue. The glue is the "structure" that performs the claimed function. The claim doesn't cover *every* way securing legs to a tabletop; it is limited to the structure it identifies (glue) and its "equivalents" (for example, epoxy). So the claim wouldn't cover a table in which the legs are nailed to the tabletop. Nails are a different structure for performing the same function.

The last three elements of Claim 1 of '949—the "heuristics"—are "means-plus-function" requirements. I have identified what structure(s) described in the '949 patent correspond to its claimed functions. You should apply my definitions of the function(s) that each means-plus-function requirement performs, and the structure(s) for performing them, just as you would apply my definition of any other claim term.

2.11

You don't have to be certain in order to find infringement, but you have to be convinced that it is more likely than not that Motorola infringed, even if just a little more likely than not. Apple must prove that every element in the claim that you are considering is found in Motorola's product. This can be proved in either of two ways. An element of a claim is found in Motorola's product if the element in its product is exactly the same as it is in the claim in Apple's patent, or alternatively if the element in Motorola's product is equivalent to the element in the claim.

So what exactly is "equivalence"? An element in the product that is alleged to infringe Apple's patent is equivalent to an element in the patent if the differences between the two would be thought insubstantial by a person of "ordinary skill" in the field of knowledge relating to the invention. (A person of "ordinary skill" in the technological field to which the patented invention belongs just means a person who has the education and experience necessary for a competent understanding of the technology described in the patent; he doesn't have to be a genius. It is up to you to decide the level of ordinary skill for each of the four patents.) To determine whether the differences are substantial or insubstantial, you should consider whether the element in question performs substantially the same function, in substantially the same way, to achieve substantially the same result, as an element of the claim. If so, the elements are equivalent.

2.12
**Defined Terms** – A few words in the patents don't have their everyday meaning. It is my role as judge to define the terms of the claims and it is your role to apply my definitions to the questions that you are asked to decide in this case. You can find my definitions to these words in the appendix to these instructions. You must accept my definitions of these claim terms as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity. If I haven't provided you with a definition for a word, then you should apply its common meaning.

2.13   **Representative Products –** Apple alleges that many different Motorola products infringe the four patents at issue in this trial. Rather than discuss every single device, the parties have agreed to focus on specific ones that are representative of the rest. You are to consider whether each representative device infringes Apple's patent according to the following list:
   **'647 Patent:** Xoom; Droid X (browser); Droid X (Motorola messaging); Droid; Droid 3.
   **'263 Patent:** Xoom; Droid; Droid2; Droid X2
   **'002 Patent:** Droid Pro; Droid X; Photon
   **'949 Patent:** Droid X

2.14
Consider separately whether each of Motorola's representative devices infringe each disputed claim of Apple's patents. Motorola's devices infringe a patent if every element in one of the patent's claims (or its equivalent) is found in Motorola's device. Apple and Motorola have identified the elements you must find present in Motorola's devices to find infringement. I list them here. The terms in bold are the terms I've defined. My definitions are at the end of these instructions.

- **647:** The claims in dispute for '647 are claims 1 and 8. If you find infringement of claim 1, claim 8 is necessarily infringed also.

Below is claim 1 of '647. To find infringement of claim 1 you must find that a Motorola device contains each element of this claim:

> 1. A computer-based system for detecting structures in data and performing actions on detected structures, comprising:
>> an input device for receiving data;
>> an output device for presenting the data;
>> a memory storing information including program routines including
>>> an **analyzer server** for detecting structures in the data, and for **linking actions to the detected structures**;
>> a user interface enabling the selection of a detected structure and a linked action; and
>> an action processor for performing the selected action linked to the selected structure; and
>> a processing unit coupled to the input device, the output device, and the memory for controlling the execution of the program routines.

- **263:** The claims in dispute for '263 are claims 1 and 2.

Below is claim 1 of '263. To find infringement of claim 1 you must find that a Motorola device contains each element of this claim:

> 1. A signal processing system for providing a plurality of realtime services to and from a number of independent client applications and devices, said system comprising:
>
> a subsystem comprising a host central processing unit (CPU) operating in accordance with at least one application program and a device handler program, said subsystem further comprising an adapter subsystem interoperating with said host CPU and said device;
> a **realtime signal processing subsystem** for performing a plurality of data transforms comprising a plurality of realtime signal processing operations; and
> at least one **realtime application program interface (API)** coupled between the subsystem and the **realtime signal processing subsystem** to allow the subsystem to interoperate with said realtime services.

If you find that claim 1 of '263 is infringed go on to consider whether claim 2 is infringed. To find infringement of claim 2 of the '263 patent, you must find that Motorola's product infringes claim 1 and also that the "signal processing system [of claim 1] receives and transmits a plurality of datatypes over a plurality of different wide area networks (WANs)."

- **002:** The claims in dispute for '002 are claims 1, 21, and 46.

Below is claim 1 of '002. To find infringement of claim 1 you must find that a Motorola device contains each element of this claim:

> 1. An interactive computer-controlled display system comprising:
> a processor;
> a data display screen coupled to the processor;
> a cursor control device coupled to said processor for positioning a cursor on said data display screen;
> a window generation and control logic coupled to the processor and data display screen to create an operating environment for a plurality of individual **programming modules** associated with different application programs that provide status and/or control functions, wherein the window generation and control logic generates and displays a first window region having a plurality of display areas on said data display screen, wherein the first window region is independently displayed and independently active of any application program, and wherein each of the plurality of display areas is associated with one of the plurality of individual **programming modules**, the first window region and the plurality of independent display areas **implemented in a window layer that appears on top of application programming windows** that may be generated; and
> an indicia generation logic coupled to the data display screen to execute at least one of the plurality of individual **programming modules** to generate information for display in one of the plurality of display areas in the first window region, wherein at least one of the plurality of display areas and its associated **programming module** is sensitive to user input, and further wherein the window generation and control logic and the indicia generation logic use **message-based communication** to exchange information to coordinate activities of the indicia generation logic to enable interactive display activity.

Next is claim 21 of '002. To find infringement of claim 21 you must find that a Motorola device contains each element of this claim:

> 21. A method for generating control information comprising:
>
> creating an operating environment for a plurality of individual **programming modules** associated with different application programs that provide status and/or control functions;
> generating a first window sized to accommodate a plurality of display areas for indicia resulting from executing at least one of the plurality of individual **programming modules**, wherein each of the plurality of display areas is associated with one of the plurality of **individual programming modules**, and wherein the first window is independently displayed and independently active of any application program, the first window region and the plurality of independent display areas **implemented in a window layer that appears on top of application programming windows** that may be generated;
> displaying the indicia in each of said plurality of display areas by executing one of a plurality of individual **programming modules** corresponding to each indicia;
> selecting one of the indicia, wherein the selecting comprises a first **programming module** deter-

>    mining which of said plurality of display areas is selected and sending a message to a **programming module** of said plurality of individual **programming modules** responsible for generating a display of a selected indicia;
>    said **programming module** performing a function in response to a selection.

Next is claim 46 of '002. To find infringement of claim 46 you must find that a Motorola device contains each element of this claim:

>    46. A computer readable medium containing executable computer program instructions, which when executed by a data processing system, cause the data processing system to perform a method for generating control information comprising:
>
>    creating an operating environment for a plurality of individual **programming modules** associated with different application programs that provide status and/or control functions;
>    generating a first window sized to accommodate a plurality of display areas for indicia resulting from executing at least one of the plurality of individual **programming modules**, wherein each of the plurality of display areas is associated with one of the plurality of **individual programming modules**, and wherein the first window is independently displayed and independently active of any application program, the first window region and the plurality of independent display areas **implemented in a window layer that appears on top of application programming windows** that may be generated;
>    displaying the indicia in each of the plurality of display areas by executing one of a plurality of individual **programming modules** corresponding to each indicia;
>    and selecting one of the indicia, wherein the selecting comprises a first **programming module** determining which of the plurality of display areas is selected and sending a message to a **programming module** of the plurality of individual programming modules responsible for generating a display of a selected indicia, and the **programming module** performing a function in response to a selection.

- **949:** The claim in dispute for '949 is claim 1.

Below is claim 1 of '949. To find infringement of claim 1 you must find that a Motorola device contains each element of this claim:

>    1. A computing device, comprising:
>    a touch screen display;
>    one or more processors;
>    memory; and
>    one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including:
>        instructions for detecting one or more finger contacts with the touch screen display;
>        instructions for applying one or more heuristics to the one or more finger contacts to determine a command for the device; and
>        instructions for processing the command;

> wherein the one or more **heuristics** comprise:
>> a vertical screen scrolling **heuristic** for determining that the one or more finger contacts correspond to a one-dimensional vertical screen scrolling command rather than a two-dimensional screen translation command based on an angle of initial movement of a finger contact with respect to the touch screen display;
>> a two-dimensional screen translation **heuristic** for determining that the one or more finger contacts correspond to the two-dimensional screen translation command rather than the one-dimensional vertical screen scrolling command based on the angle of initial movement of the finger contact with respect to the touch screen display; and
>> a next item **heuristic** for determining that the one or more finger contacts correspond to a command to transition from displaying a respective item in a set of items to displaying a next item in the set of items.

The "vertical screen scrolling heuristic," "two-dimensional screen translation heuristic," and "next item heuristic" are means-plus-function limitations (as described above in section 2.10). I have defined the functions performed by each heuristic and the structures associated with the claimed functions. Motorola's device meets the means-plus-function limitation if it has a structure that is identical or "equivalent" (as that term is explained in 2.11) to the structure I defined as corresponding to the function, *and* that the device's structure performs the claimed function as I have defined it.

> The "vertical screen scrolling heuristic" performs the function of "determining that the user's finger contacts correspond to a one-dimensional vertical screen-scrolling command rather than a two-dimensional diagonal screen translation command based on the initial angle of the finger's movement on the screen." It is associated with the structure "a heuristic that uses as one input the initial angle of the user's finger swipe gesture and determines whether that angle is within a predetermined range of being perfectly vertical, as shown for example in Figure 39C at 3937."

> The "two dimensional screen translation heuristic" performs the function of "determining that the user's finger contacts correspond to two-dimensional diagonal screen translation command rather than the one-dimensional vertical screen-scrolling command based on the initial angle of the finger's movement on the screen." It is associated with the structure "a heuristic that uses as one input the initial angle of the user's finger swipe gesture and determines whether that angle is within a predetermined range of being perfectly vertical, as shown for example in Figure 39C at 3939."

> The "next item heuristic" performs the function of "determining that the user's finger contacts correspond to a command to transition from displaying one item

in a set of items to displaying the next item in the set." It is associated with the structure of "a heuristic that uses as one input a user's finger tap on the right side of the device's touch screen."

2.15

**Induced Infringement** - For its '002 patent, Apple also contends that Motorola induced its customers to infringe claim 21. To prove inducement, Apple must show it was more likely than not that Motorola (1) knew about the '002 patent, (2) instructed its customers to use its products in a way that infringed the patent (and that the customers did infringe the patent), and (3) knew or should have known that its acts would cause its customers to infringe the patent.

2.16

**Willful Infringement** - Apple contends not only that Motorola infringed each of its patents, but also that it did so willfully. You are to consider willful infringement only if you have first found that Motorola committed "simple infringement" (that is, that Motorola infringed the patent), under the lower standard of proof that I mentioned earlier (the "more likely than not" standard).

If you find there was, you should go on to decide whether the infringement was willful. To prove willfulness, Apple must prove by "clear and convincing evidence" both that it was highly likely that Motorola's product infringed and that Motorola either knew that it was highly likely or should have known that it was. "Clear and convincing" evidence is evidence that makes it highly likely, rather than just more likely than not, that a particular proposition is true.

2.17

**Invalidity** - Even if you do find that there was infringement of any of Apple's patents, that isn't the end of the case. Motorola argues that Apple's claims are invalid because they were obvious in light of prior technology before the patents were issued and/or because they were anticipated by prior technology. Prior technology means all the information that is publicly known, used by others, or available to a person of ordinary skill at the time of the invention. To qualify, the item or reference must have been made, known, used, published, or patented either before the invention was made or more than one year before the filing date of the patent application. Prior technology does not include a publication that describes the inventor's own work and was published less than one year before the date of invention. Examples of prior technology include other patents, inventions, products, articles, books, and scientific literature.

If Motorola proves either that the patent was obvious or anticipated by prior technology, it wins the case even if it infringed the patents.

**Obviousness** – A patent claim is invalid if it is obvious. To prove obviousness, Motorola must show by clear and convincing evidence that a person of ordinary skill (as defined earlier), who was aware of the prior technology that existed when the invention was made, would have viewed the invention as obvious. To evaluate obviousness, you should assume that the person of ordinary skill knows all the prior technology existing when the invention was made. You should then determine what he would have thought obvious. You must not use hindsight; that is, you must not consider what is known now, including what could be learned from the patent you are considering.

In making your decision regarding obviousness, you should consider the scope and content of the prior technology and also any differences between the prior technology and the invention in the patent claim. These factors are the primary factors that you should consider in deciding the question of obviousness, but you should also consider the following secondary factors, which may indicate that Apple's invention was not obvious: whether other inventors failed in attempting to make the invention in the patent claim; or copied the invention; or praised it; or sought or obtained from Apple a license to the patent. None of these factors has to be present for you to conclude that the Apple's invention was not obvious. And it is for you to decide how much weight to give each factor that you find is present. But remember that these are secondary factors, and you must not give them as much weight as the primary factors listed above.

Two more points: (1) Because most inventions are built on prior knowledge, the fact that each element of a claim is found in prior technology is not enough, by itself, to prove obviousness. It could be that the combination of these previously known elements is what makes the invention innovative. (2) In determining whether Motorola has proved obviousness, you may combine multiple items of prior technology, if a person of ordinary skill would have thought it obvious to combine them.

**Anticipation** – A patent claim is invalid if it is anticipated. To prove that a claim is anticipated, Motorola must show by clear and convincing evidence that each element of the claim is present in a single piece of prior technology and that, by looking at that one piece of prior technology, a person with an ordinary level of skill in the field would have been able to make and use the invention disclosed in the claim.

A final point: recall that, as I explained earlier, to find obviousness you can combine multiple pieces of prior technology. You cannot combine prior technology to establish invalidity by anticipation; only a single specific piece of prior technology can anticipate a patent.

2.18

Motorola also contends that claim 1 of the '949 patent is invalid because the patent's specification (the text which precedes the claims and describes the invention) lacks sufficient detail to explain the invention. To prove that a claim is invalid on this basis, Motorola must prove by clear and convincing evidence that either:

(1) **Written Description:** a person of ordinary skill in the field of the invention wouldn't recognize that the specification described all the requirements of the claim, or

(2) **Enablement:** the specification doesn't contain enough information to enable one of ordinary skill in the art to make and use a product containing the invention without an unreasonable amount of experimentation (for that particular field).

2.19

When you go to the jury room for your deliberations, first select one of you to be the foreperson. He or she will preside over your deliberations and will be your representative here in court.

Verdict forms have been prepared for you. Take them to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.

2.20

The verdict must represent the considered judgment of each juror and must be unanimous—meaning that every juror must agree on how a given question should be answered—whether the verdict is in favor of Apple or in favor of Motorola, or for Apple on some issues and Motorola on others. You should make every reasonable effort to reach a unanimous verdict and in doing so you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views, and to change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

2.21

If it becomes necessary during your deliberations to communicate with me, you may send a note by a court security officer, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me by any other means. If you have trouble reaching a unanimous verdict, you must not tell me or anyone else which side is favored by more jurors.

**DEFINED TERMS IN THE PATENT CLAIMS**

**'647 terms:**

An "analyzer server" is a server routine separate from a client that receives data having structures from the client.

The phrase "linking actions to the detected structures" refers to creating a specified connection between each detected structure and at least one computer subroutine that causes the CPU to perform a sequence of operations on that detected structure.

**'263 terms:**

A "realtime API" is an API that allows realtime interaction between two or more subsystems.

A "realtime signal processing subsystem" is subsystem that processes data subject to explicit (bounded) response-time constraints and is capable of handling data transmitted at a constant bit rate.

**'002 terms:**

A "programming module" is a self contained unit of code, in other words a distinct component of a larger system that performs a given task and is interchangeable with other components.

A toolbar "implemented in a window layer that appears on top of application programming windows that may be generated," means that the toolbar is a window that, when it appears at all, appears in a top 'window layer' that other windows—those displaying files or running programs—cannot overlap or block though they can overlap one another. It does not require that that the window be always visible but only that it appear on top of other windows and never be obstructed when it is generated.

"Message-based communication" means simply communication that contains a message.

**'949 terms:**

"Heuristics" means one or more rules to be applied to data to assist in drawing inferences from that data.