June 25, 2012

# JURY INSTRUCTIONS

## INTRODUCTORY INSTRUCTIONS

1.1

**Introduction -** This case involves one patent, called '898 (the patent actually has a longer number, but for convenience we'll use just the last three digits). The patent pertains to cellphone communications technology. More specifically, the '898 patent describes a process for warning a cellular tower that a transmission from a cell phone is nearing completion. The specifics of the technology will be explained to you in the course of the trial.

I'm going to give you some preliminary instructions to orient you to the case. I'll give you more detailed instructions later, when the trial is over and you are about to consider what your verdict will be.

Patents are issued by the United States Patent and Trademark Office and are intended to encourage the development of new technologies and inventions by giving anyone who comes up with such an invention—the inventor—the right to prevent anyone else from making, using, selling, or offering to sell his patented invention, except with the inventor's permission, for about twenty years. The idea is to enable the inventor to make money off of his invention, which encourages inventors. Without patents, an inventor might not be able to make much money off of an invention because others could copy the invention and he would have no way of stopping them. If someone else does make, use, sell, or offer to sell a patented invention without the inventor's permission—or as it's said in patent law, "infringes the patent"—the owner of the patent can sue the alleged violator (the "infringer") in federal court. If the inventor wins, the defendant may be forced to stop infringing the patent or to pay the inventor for having infringed. However, even if the defendant did infringe the patent, the defendant can still win the case if he can prove that the patent was "invalid," meaning the Patent and Trademark Office made a mistake in issuing it. Both infringement and validity are issues in this lawsuit, as I'll explain.

The parties to this lawsuit are two companies that sell electronic devices: Motorola and Apple. Motorola is the plaintiff and Apple is the defendant. Motorola owns the patent, and Apple sells smartphones and tablet computers with cellular capability that Motorola says infringe its patent.

1.2

**Trial Order –** In this trial, you must consider whether the '898 patent is invalid and whether the Apple iPhone4, which is representative of all Apple products at issue in this case, infringes it. You should consider validity and infringement separately.

1.3

**Court-Appointed Witness** - The court has appointed Professor Steve McLaughlin, an engineering professor at a top university, to help explain the technologies at issue in this case. He is not affiliated with either Apple or Motorola, and has no stake in the outcome of the case. He is here simply to help you reach a more informed decision. At the beginning of the case, McLaughlin will give a short presentation explaining the technology. Then Motorola and Apple will present their arguments, which will include testimony by additional witnesses about whether Motorola's 898 patent is invalid and whether Apple's smartphones and tablets infringe it. Finally McLaughlin will interpret Apple's and Motorola's arguments and offer his own opinions about infringement and validity.

1.4

**Infringement** - The invention protected by a patent is described in the section of the patent labeled "patent claims." The claims are set forth in separately numbered paragraphs at the end of the patent. Although Motorola's '898 patent has many claims, Motorola is only arguing that Apple's iPhone4 infringes claims 1, 2, and 5 of the patent. Each claim is further made up of "elements," which are the individual components of the invention described in the claim. For example, a patent on a new type of lamp would have elements such as a light bulb, an electrical cord, a lampshade, and so on. A claim in a valid patent gives its inventor only the right to stop others from making, using, selling, or offering to sell a device that has *all* of the elements described in the claim, or elements that are equivalent to all of those elements. A patent is not infringed by a device that is similar to the patented invention unless that device contains every element described by the patent claim, or equivalents to those elements.

For that reason, when a product (Apple's iPhone4 in this case) is accused of infringing a patent, the patent claims must be compared to the product very closely. To prove infringement, Motorola (who is the owner of the patent) must prove that every element in one of '898's claims is found in the iPhone4, whether as an exact duplicate of the element or as being "equivalent" to it, meaning that a person of "ordinary skill" in the relevant field of technology would have considered the differences between them to be insubstantial. (A person of "ordinary skill" in the technological field to which the patented invention belongs is a person who has the education and experience necessary for a competent understanding of the technology described in the patent. He doesn't have to be a genius, but for complicated technologies he may need to have studied that

type of technology in college and work with that technology for a number of years before reaching the level of "ordinary skill.") Any difference is insubstantial if, for each element of the patented claims, a feature of Apple's product performs substantially the same function and works in substantially the same way to achieve substantially the same result as that element. One factor you may consider in making that determination is whether a person of ordinary skill (as I've just defined it) would have regarded an aspect of Motorola's product to be interchangeable with the element of the claim.

When deciding infringement, you will compare the patent claims to Apple's products. You may also compare the patent claims to a cellular technical standard practiced by Apple's products. You should consider only the aspects of the devices related to those patent claims. You must not consider other similarities or differences between Apple's products and Motorola's products.

For Motorola to prove infringement of any patent at issue in this case, it must convince you that its position is more likely true than false.

1.5

**Willful infringement -** Motorola contends not only that Apple infringed its patent, but that it did so "willfully." To prove this, Motorola must prove by "clear and convincing evidence" that it was highly likely that the Apple's products infringed and that Apple either knew that it was highly likely or should have known that its product infringed the patent.

"Clear and convincing evidence" means evidence that convinces you that it is highly likely that the proposition is true. You must first decide whether there was simple infringement, under the lower standard of proof that I mentioned in section 1.4, and if you find that there was, you should go on to decide whether the infringement was willful under the higher "clear and convincing evidence" standard of proof.

**Induced Infringement –** Sometimes a party can be held liable for infringement that is actually committed by another person. One way is by "inducing" others to infringe. Motorola contends that Apple induced its customers to infringe the '898 patent. To prove inducement, Motorola must show that Apple: (1) knew about the '898 patent, (2) instructed its customers to use its products in a way that infringed the patent, and (3) knew or should have known that its acts would cause its customers to infringe the patent.

**Contributory Infringement** – Motorola also contends that Apple contributed to the infringement of its patents.  To prove this, Motorola must prove that: (1) Apple knew of the '898 patent; (2) Apple sold a component that is a significant part of the patented invention and was not a common item with other uses that do not infringe the

'898 invention; (3) Apple's customers performed the infringing processes by using this part; and (4) Apple knew the part was especially made to infringe.

1.6

**Validity -** To be entitled to patent protection, an invention must be new, useful, and nonobvious. If the Patent and Trademark Office gives someone a patent for an invention that does not meet all three of these requirements, then the Patent and Trademark Office has made a mistake and the patent (or the particular claim of the patent that fails to meet those requirements) is invalid. Apple contends that the claims of the '898 patent relevant to this trial are in fact invalid. Because the Patent and Trademark Office has considered these requirements in making the decision to issue patents, the law presumes that patents are valid. But a court can decide that the presumption is incorrect and invalidate a patent or a particular claim in a patent. To succeed with its claim of invalidity, Apple must prove invalidity by clear and convincing evidence. In can prove invalidity by showing that the patent was obvious or anticipated by a prior piece of technology.

**Obviousness -** A patent claim is invalid if the invention claimed is obvious. An invention is obvious if a person who had ordinary skill in the technology relevant to the invention and was aware of the "prior art" already existing at the time of the invention would have come up with the invention at that time, or in other words would have viewed the invention as obvious. ("Prior art" is just patent speak for what was already known in the relevant field when the patented technology was invented. It is the same as prior technology, which is the term I will use throughout these instructions)

When deciding obviousness, you should ask not whether it would seem obvious to a person of ordinary skill in the field *today*, but whether it would have at the time the patented technology was invented. In other words, you should not use hindsight.

**Anticipation -** A patent claim is also invalid if all of its elements were already contained in an existing invention—in other words it had already been invented—even if the new patentee didn't know about the earlier invention.

1.7

**The Jury's Role -** The jury's job is to determine the facts relating to the legal issues. I will tell you what the law is and you'll apply the law to the facts to determine which side wins. Nothing I say during the trial is intended to indicate what I think the facts are or your verdict should be. You're the decision makers; I'm the traffic cop. Although this is a civil case rather than a criminal case, it is very important to the parties. They and I expect you to make a careful, thoughtful, conscientious decision, bearing in mind the importance of the case to the parties. The parties are companies rather than

individuals, but they have legal rights just as individuals do and are entitled to the same consideration that you would give a case between individuals.

1.8

**Evidence -** The evidence you'll be hearing or reading consists of testimony of witnesses, documents admitted into evidence as exhibits, and any facts that the lawyers agree to or that I may instruct you to accept as being true. The exhibits are in binders, one from each side, which you will be given momentarily.

The parties may present the testimony of a witness by reading from a deposition transcript or by playing a videotape of the witness's deposition testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had appeared in court.

Certain things are not evidence and must not be considered by you:
- Statements, arguments, and questions by lawyers.
- Objections to questions or exhibits. Lawyers are entitled to object to evidence that it would be inappropriate for the jury to consider, according to the Federal Rules of Evidence. If an objection is sustained, you should ignore the question or exhibit. If the objection is overruled, treat the answer or exhibit like any other.
- Testimony that I have excluded or told you to disregard.
- Anything you may see or hear outside the courtroom. You're to decide the case solely on the basis of the evidence presented in the courtroom. Information you may come across outside the courtroom, through online research, for example, is often incorrect or misleading and may have been written by someone with an interest in swaying your decision unfairly. We are not trying to hide information from you, just ensure that it is presented fairly and accurately, so if you have any questions about the issues in the case, please ask me.
- Certain exhibits that are called "demonstrative exhibits." These include models, diagrams, graphs, and sketches. Demonstrative exhibits may be shown to you but they are not themselves evidence; they're just visual aids to help you understand the case better.

In deciding whether any fact has been proved, you should consider all the evidence relating to the question regardless of which side introduced it. You should also decide how much of a witness's testimony to accept or reject. This includes the neutral, court-appointed witnesses. Just because they are not beholden to either party doesn't mean their testimony is necessarily entitled to any more weight than other witnesses you will hear from.

1.9

**Jury Conduct –** As jurors it is your duty to follow these rules to make sure that the case is decided fairly:

You may not discuss the case among yourselves until the end of the case when you go to the jury room to deliberate and to decide on your verdict.

You may not talk to anyone (including family or friends) or make any public or online comments about this case until the trial has ended and you have been discharged as jurors. And any online comment really means *any* online comment: you may not post about the case on Facebook or Twitter or other websites, for example—even comments you may think are completely innocent and lacking in substance (not even "that Judge Posner is a really nice guy").

You may not read or listen to anything bearing on this case in any way, including things your friends or family may want to tell you, news stories, radio or television reports, or the Internet. You may not do any research online or conduct any other type of investigation of the case, the lawyers, the witnesses, or the companies that are involved. We are not trying to hide information from you, just ensure that it is presented fairly and accurately. (If you want information about any aspect of the case or the law, you can ask me either by sending a note to me via the courtroom deputy or by raising your hand.) If anyone tries to talk to you about the case, bring that to my attention promptly.

You may ask questions of the witnesses. If you want to ask a question of a witness, raise your hand and I'll ask you to ask me the question first, so that I can make sure that it's in a form that's proper for the witness to answer.

Keep an open mind while listening to and reading all the evidence. Don't form an opinion until all the evidence is in.

You've been given pads on which to make notes if you want, but leave the pads in the jury room at the end of each day, until you begin your deliberations with the other jurors. Try not to look at other jurors' notes; but if you inadvertently see them, don't let them influence you, because they may not be accurate.

1.10

The trial will now begin. Each side will make an opening statement. That is not evidence, but just a sketch of what the party intends to prove. Then Prof. McLaughlin will give a short presentation explaining the technology of 898, after which each side will question its witnesses, and the lawyers for the other side will cross-examine them, to try to bring out errors in their testimony. Then you will hear from McLaughlin again and the parties will cross-examine him. After all the witnesses have testified, the lawyers will present closing arguments. I will then give you final instructions, setting forth the law in somewhat greater detail than in these preliminary instructions, and you'll then go to the jury room with a copy of the instructions, your notes, and your evidence binders, to deliberate on your verdict.

# FINAL INSTRUCTIONS

2.1

     Members of the jury, you've seen and heard all the evidence and arguments of the lawyers. Now it's your turn. You'll decide, on the basis of the evidence you've heard and read, what the facts are that relate to how the case should be decided, and you'll apply the law that I explain to you in these instructions to the facts to reach a verdict—the final determination of how the case will turn out. You must follow my legal instructions, even if you disagree with them, because they state the law, and you must apply the law, just like a judge.

     Perform these duties fairly and impartially.

     Nothing I say now, and nothing I said during the trial, is meant to indicate what I think the facts are or your verdict should be.

2.2

     The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations, which are agreements between both sides that certain facts are true. You should give the same consideration to testimony presented to you by video as you would if the witnesses had come to court and testified live.

2.3

     These things are not evidence:
- Testimony or exhibits that I ordered stricken.
- Anything you saw or heard outside this courtroom.
- Questions to witnesses, and objections to questions by lawyers.
- The lawyers' opening statements and closing arguments.
- Any notes you took during the trial; they are just to help you remember things.

2.4

     In determining whether any fact has been proved, you should consider all of the evidence relating to the question regardless of which side introduced it.

2.5

     You must decide whether witnesses' testimony is truthful and accurate, in whole, in part, or not at all, and how much weight, if any, to give that testimony in resolving a factual issue. You shouldn't just count noses: the fact that one side presents more witnesses, testimony, or other evidence on an issue than the other side doesn't mean the first side is right.

When evaluating testimony, you may consider, among other things, the witness's manner while testifying, whether the witness's testimony is reasonable in light of other evidence you've heard, and any bias or interest the witness may have.

2.6

You have heard some opinions from witnesses who were called to testify because they have specialized knowledge. You should weigh their testimony in the same way that you weigh the testimony of any other witness. You are not required to accept an opinion of a witness who has specialized knowledge, but you must give such a witness's testimony the weight you think it deserves, considering the reasons the witness gave for the opinion, the witness's qualifications, and the other evidence in the case. This goes for the court-appointed witnesses, too.

2.7

**"Ordinary skill in the technology"** - Some infringement and invalidity issues in patent cases are determined by reference to a "person of ordinary skill in the art," which really means ordinary skill in the technology of the patent. It is up to you to decide the level of ordinary skill for each of the four asserted patents. When deciding on the level of ordinary skill, consider the sophistication of technology in the field, the types of problems encountered in the field, and the level of education and experience of those working in the field.

2.8

The issues you have to decide are:
1a. whether Motorola has proved that it is more likely than not that Apple has infringed claims 1, 2 and 5 of the '898 patent;
1b. if you find infringement of any patent claim, whether Motorola has proven by clear and convincing evidence that Apple infringed that claim willfully;
2. whether Motorola has proved that it is more likely than not that Apple induced infringement of Motorola's patent;
3. whether Motorola has proved that it is more likely than not that Apple contributed to infringement of Motorola's patent; and
4. whether Motorola has proved by clear and convincing evidence that any of the claims of 898 are invalid.

2.9

A product infringes a patent if every element in a claim is found in Apple's product. The patent claims are the numbered sentences at the end of each patent. While the patent also includes diagrams and text, known as the patent's "specification," that describe the invention or give examples of how it could be used, the claims are what de-

fine what the patent covers.

Each claim is treated as though it is a separate patented invention: Apple doesn't need to have infringed every claim in a patent for you to find infringement, and indeed Motorola has only argued that Apple infringed a few claims of '898. If Apple infringed a single claim, then it has infringed Motorola's patent.

2.10

You don't have to be certain in order to find infringement, but you have to be convinced that it is more likely than not that Apple infringed, even if just a little more likely than not. Motorola must prove that every element in the claim that you are considering is found in Apple's product. This can be proved in either of two ways. An element of a claim is found in Apple's product if the element in its product is exactly the same as it is in the claim in Motorola's patent, or alternatively if the element in Apple's product is equivalent to the element in the claim.

So what exactly is "equivalence"? An element in the product that is alleged to infringe Motorola's patent is equivalent to an element in the patent if the differences between the two would be thought insubstantial by a person of "ordinary skill" in the field of knowledge relating to the invention. (A person of "ordinary skill" in the technological field to which the patented invention belongs just means a person who has the education and experience necessary for a competent understanding of the technology described in the patent; he doesn't have to be a genius. It is up to you to decide the level of ordinary skill for each of the four patents.) To determine whether the differences are substantial or insubstantial, you should consider whether the element in question performs substantially the same function, in substantially the same way, to achieve substantially the same result, as an element of the claim. If so, the elements are equivalent.

2.11

**Defined Terms** – A few words in the patents don't have their everyday meaning. It is my role as judge to define the terms of the claims and it is your role to apply my definitions to the questions that you are asked to decide in this case. You must accept my definitions of these claim terms as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity. If I haven't provided you with a definition for a word, then you should apply its common meaning.

2.12

Consider separately whether Apple's iPhone4 infringes claim 1, claim 2, and claim 5 of '898. Apple's iPhone4 infringes a patent claim if every element of the patent's claim (or its equivalent) is found in Apple's device. You may also determine infringe-

ment by comparing a patent claim to a cellular technical standard practiced by Apple's phones. Apple and Motorola have identified the elements you must find present in Motorola's devices to find infringement. I list them here.

**898 Claim 1:** Motorola alleges that the iPhone4 infringes claim 1 of '898. To find infringement you must find that Apple's device infringes each element of the claim. The parties agree that only the elements I have underlined are in dispute; you can ignore the rest.

1. In a wireless communication system, a method for transmitting a communication signal comprising a plurality of units of information, the method comprising:
>    transmitting the plurality of units of information via a **predetermined number of channel resources**
>    determining a number of the plurality of units remaining in at least a portion of the communication signal.
>    based on the **predetermined number of channel resources**, adjusting the number of the plurality of units remaining to produce an adjusted number of units remaining; and
>    transmitting the adjusted number of units remaining to the wireless communication system.

I have defined the term "predetermined number of channel resources" to refer to a number of channel resources determined before transmission of units of information. The number doesn't have to be determined before any portion of the message is transmitted.

**898 Claims 2 & 5:** The iPhone4 only infringes claim 2 or claim 5 if it infringes claim 1. If you find that Apple's device infringes claim 1, consider whether it contains the further limitations of claims 2 or 5:

> The iPhone4 infringes claim 2 of '898 if it infringes claim 1 and also "divides the number of the plurality of units remaining by the predetermined number of channel resources."

> The iPhone4 infringes claim 5 of '898 if it infringes claim 1 and "the predetermined number of channel resources is greater than one."

2.13
    **Willful Infringement -** Motorola contends not only that Apple infringed '898, but also that it did so willfully. You are to consider willful infringement only if you have first found that Apple committed "simple infringement" (that is, that Apple in-

fringed one of the 898 claims), under the lower standard of proof that I mentioned earlier (the "more likely than not" standard).

If you that the iPhone4 infringed '898, you should go on to decide whether the infringement was willful. To prove willfulness, Motorola must prove by "clear and convincing evidence" both that it was highly likely that Apple's product infringed and that Apple either knew that it was highly likely or should have known that it was. "Clear and convincing" evidence is evidence that makes it highly likely, rather than just more likely than not, that a particular proposition is true.

2.14

**Contributory Infringement -** Motorola contends that Apple contributed to the infringement of the '898 patent. To prove this, Motorola must show that it was more likely than not that: (1) Apple knew of the '898 patent; (2) Apple sold a component or product that is significant part of the invention patented by '898 that was not a common item with other uses that don't infringe the '898 invention; (3) its customers performed the infringing processes by using this part; and (4) Apple knew the part was especially made to infringe.

2.15

**Induced Infringement -** Motorola also contends that Apple induced its customers to infringe the '898 patent. Induced infringement covers a broader category of acts than contributory infringement. To prove induced infringement, Motorola must show that it was more likely than not that Apple (1) knew about the '898 patent, (2) instructed its customers to use its products in a way that infringed the patent (and that the customers did infringe the patent), and (3) knew or should have known that its acts would cause its customers to infringe the patent.

2.16

**Invalidity** - Even if you do find that the iPhone4 infringed the '898 patent, that isn't the end of the case. Apple argues that the claims of the '898 patent are invalid because they were obvious in light of prior technology before the patents were issued and/or because they were anticipated by prior technology. Prior technology means all the information that is publicly known, used by others, or available to a person of ordinary skill at the time of the invention. To qualify, the item or reference must have been made, known, used, published, or patented either before the invention was made or more than one year before the filing date of the patent application. Prior technology does not include a publication that describes the inventor's own work and was published less than one year before the date of invention. Examples of prior technology include other patents, inventions, products, articles, books, and scientific literature.

If Apple proves either a claim of '898 was obvious or anticipated by prior technology, it wins the case even if it infringed that claim.

**Obviousness** – A patent claim is invalid if it is obvious. To prove obviousness, Apple must show by clear and convincing evidence that a person of ordinary skill (as defined earlier), who was aware of the prior technology that existed when the invention was made, would have viewed the invention as obvious. To evaluate obviousness, you should assume that the person of ordinary skill knows all the prior technology existing when the invention was made. You should then determine what he would have thought obvious. You must not use hindsight; that is, you must not consider what is known now, including what could be learned from the patent you are considering.

In making your decision regarding obviousness, you should consider the scope and content of the prior technology and also any differences between the prior technology and the invention in the patent claim. These factors are the primary factors that you should consider in deciding the question of obviousness, but you should also consider the following secondary factors, which may indicate that Motorola's invention was not obvious: whether other inventors failed in attempting to make the invention in the patent claim; or copied the invention; or praised it; or sought or obtained from Motorola a license to the patent. None of these factors has to be present for you to conclude that the Motorola's invention was not obvious. And it is for you to decide how much weight to give each factor that you find is present. But remember that these are secondary factors, and you must not give them as much weight as the primary factors listed above.

Two more points: (1) Because most inventions are built on prior knowledge, the fact that each element of a claim is found in prior technology is not enough, by itself, to prove obviousness. It could be that the combination of these previously known elements is what makes the invention innovative. (2) In determining whether Apple has proved obviousness, you may combine multiple items of prior technology, if a person of ordinary skill would have thought it obvious to combine them.

**Anticipation** – A patent claim is invalid if it is anticipated. To prove that a claim is anticipated, Apple must show by clear and convincing evidence that each element of the claim is present in a single piece of prior technology and that, by looking at that one piece of prior technology, a person with an ordinary level of skill in the field would have been able to make and use the invention disclosed in the claim.

A final point: recall that, as I explained earlier, to find obviousness you can combine multiple pieces of prior technology. You cannot combine prior technology to establish invalidity by anticipation; only a single specific piece of prior technology can anticipate a patent.

2.17

When you go to the jury room for your deliberations, first select one of you to be the foreperson. He or she will preside over your deliberations and will be your representative here in court.

Verdict forms have been prepared for you. Take them to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.

2.18

The verdict must represent the considered judgment of each juror and must be unanimous—meaning that every juror must agree on how a given question should be answered—whether the verdict is in favor of Motorola or in favor of Apple, or for Motorola on some issues and Apple on others. You should make every reasonable effort to reach a unanimous verdict and in doing so you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views, and to change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

2.19

If it becomes necessary during your deliberations to communicate with me, you may send a note by a court security officer, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me by any other means. If you have trouble reaching a unanimous verdict, you must not tell me or anyone else which side is favored by more jurors.