# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| APPLE INC. and NeXT SOFTWARE, INC. (f/k/a NeXT COMPUTER, INC.), <br><br> Plaintiffs, <br><br> v. <br><br> MOTOROLA, INC. and MOTOROLA MOBILITY, INC. <br><br> Defendants. | Case No. 1:11-cv-08540 <br><br> Judge: Hon. Richard A. Posner |

## MOTOROLA'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS AND VERDICT FORMS

**TABLE OF CONTENTS**

I.  MOTOROLA'S OBJECTIONS TO THE COURT'S PROPOSED JURY VERDICT FORM FOR THE APPLE LIABILITY TRIAL...............................................1

II. MOTOROLA'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS FOR THE APPLE LIABILITY TRIAL .................................................4

III. MOTOROLA'S OBJECTIONS TO THE COURT'S PROPOSED JURY VERDICT FORM FOR THE MOTOROLA LIABILITY TRIAL .....................................4

IV. MOTOROLA'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS FOR THE MOTOROLA LIABILITY TRIAL.......................................9

Defendants Motorola Solutions, Inc. (f/k/a Motorola, Inc.) and Motorola Mobility, Inc. (collectively, "Motorola") respectfully submit the following objections to the Court's proposed jury instructions (D.E. 1009-1, 1009-3) and verdict forms (D.E. 1009-2, 1009-4).

I. **MOTOROLA'S OBJECTIONS TO THE COURT'S PROPOSED JURY VERDICT FORM FOR THE APPLE LIABILITY TRIAL**

1. Motorola objects to the Court's consolidation of literal infringement and infringement under the doctrine of equivalents into one verdict entry. The jury must undertake its determination of literal infringement and infringement under the doctrine of equivalents separately, and including just one check box for the two separate determinations is likely to confuse the jury. Moreover, it makes it impossible for the Court or the parties to know whether the jury's infringing finding was based on literal infringement or on the doctrine of equivalents. Such information is critical for use, if necessary, at the JMOL and/or appeal stage. Separating out the verdict entries for literal infringement and infringement under the doctrine of equivalents is also more convenient in the event that the Court determines at trial that Apple is not entitled to allege infringement under the doctrine of equivalents (by way of prosecution history estoppel or otherwise).

The Court's verdict form also does not explain that it is not necessary for the jury to determine under the doctrine of equivalents if it has already confirmed literal infringement. Motorola respectfully requests that the Court separate entries for literal infringement and infringement under the doctrine of equivalents for each of the Apple patents-in-suit in accordance with the following example (taken from Motorola's proposed verdict entry for the '949 Patent):

<u>Question No. 1 (Infringement - Literal)</u>

For the claim listed below, do you find that Apple has proven by a preponderance of the evidence that each and every limitation of that claim is met literally by Motorola's accused products? Answer "Yes" (for Apple) or "No" (for Motorola).

Claim 1 of the '949 Patent (Droid X) _____

If you answered "Yes" above, please move directly to Question 3. If you answered "No" above, please move to Question 2.

<u>Question No. 2 (Infringement – Doctrine of Equivalents)</u>

For the claim listed below, do you find that Apple has proven by a preponderance of the evidence that each and every limitation of that claim is met by Motorola's accused products under the doctrine of equivalents? Answer "Yes" (for Apple) or "No" (for Motorola) for each asserted claim.

Claim 1 of the '949 Patent (Droid X) _____

If you answered "Yes" above, please move to Question 3. If you answered "No" above, please move directly to Question 4.

2. Motorola objects to the Court's list of representative products for Apple's '647 Patent. The parties agreed on June 2, 2012 that the Droid 3 is no longer a representative product for the Apple '647 Patent. In addition, the Court's list of products in the verdict form should clarify that the accused functionality for the Motorola Droid product is "MMS." Revisions to the list of representative products at page 1 of the Court's verdict form on infringement should respectfully be altered as follows:

2

If you answer "Yes," do you find that:

| | |
|---|---|
| The Motorola Xoom infringes Claim 1 of '647: | __ Yes __ No |
| The Motorola Xoom infringes Claim 8 of '647: | __ Yes __ No |
| The Motorola DroidX (browser) infringes Claim 1 of '647: | __ Yes __ No |
| The Motorola DroidX (browser) infringes Claim 8 of '647: | __ Yes __ No |
| The Motorola DroidX (messaging) infringes Claim 1 of '647: | __ Yes __ No |
| The Motorola DroidX (messaging) infringes Claim 8 of '647: | __ Yes __ No |
| The Motorola Droid (MMS) infringes Claim 1 of '647: | __ Yes __ No |
| The Motorola Droid (MMS) infringes Claim 8 of '647: | __ Yes __ No |
| ~~The Motorola Droid3 infringes Claim 1 of '647:~~ | ~~__ Yes __ No~~ |
| ~~The Motorola Droid3 infringes Claim 1 of '647:~~ | ~~__ Yes __ No~~ |

3. Motorola objects to the Court's request that jurors make a general determination on infringement before they analyze whether each representative product infringes any particular claim. This invites juror bias. For example, a juror that has a predisposed belief that Motorola infringes may reflexively check "Yes" for the general question, and then fill in the remainder of his responses on each representative product to ensure consistency. In this same vein, the question "Do you find that Apple has proved that it is more likely than not that *any* of Motorola's devices infringe . . . .," while not a leading question, is unnecessary and may promote a verdict that at least one of Motorola's devices infringes.

The Court and the parties also have no need for a response to the general question, as they can determine the general answer by simply looking at the verdict for the representative products. Motorola respectfully submits that the Court adopt the two tiered structure set forth by example in its first objection above.

3

    4.    Motorola respectfully requests that the Court include a verdict entry on indefiniteness. Motorola asserts that the phrase "based on the angle of initial movement" in the '949 Patent is indefinite because whether or not a product meets this limitation is based on the subjective perception of the user. Motorola submits that a jury instruction and verdict entry on this topic can help the Court determine whether there are any objective criteria to determine whether a Motorola Accused Device meets the required claim limitation.

**II.    MOTOROLA'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS FOR THE APPLE LIABILITY TRIAL**

    1.    Motorola respectfully requests that the Court add an additional definition for the '263 Patent, as follows: "device handler" is "software associated with an interface device that sets up data flow path and also presents data and commands to a realtime signal processing subsystem." The parties have agreed to this construction without the need for Court intervention.

    2.    Motorola objects to the absence in Section 2.18 of an instruction on indefiniteness for the '949 Patent. As explained above, Motorola asserts that the phrase "based on the angle of initial movement" in the '949 Patent is indefinite because whether or not a product meets this limitation is based on the subjective perception of the user. Motorola respectfully submits that a jury instruction and verdict entry on this topic can help the Court determine whether there are any objective criteria to determine whether a Motorola Accused Device meets the required claim limitation.

**III.    MOTOROLA'S OBJECTIONS TO THE COURT'S PROPOSED JURY VERDICT FORM FOR THE MOTOROLA LIABILITY TRIAL**

    1.    Motorola repeats its first objection to the Court's proposed Jury Verdict Form for the Apple Liability Trial as if fully set forth herein. In accordance with its proposed verdict form

filed with the final pre-trial order (D.E. 1009 at 98-99), Motorola respectfully requests that Question 1 be split into two questions as follows:

<u>Question No. 1 (Infringement – Literal)</u>

For each claim listed below, do you find that Motorola has proven by a preponderance of the evidence that each and every limitation of that claim is literally met by Apple's accused processes? Answer "Yes" (for Motorola) or "No" (for Apple) for each asserted claim.

    Claim 1 of the '898 Patent (iPhone 4)    _____

    Claim 2 of the '898 Patent (iPhone 4)    _____

    Claim 5 of the '898 Patent (iPhone 4)    _____

If you answered "Yes" to each claim above, please move directly to Question 3. If you answered "No" to any of the claims above, please move to Question 2 for that claim.

<u>Question No. 2 (Infringement – Doctrine of Equivalents)</u>

For each claim listed below, do you find that Motorola has proven by a preponderance of the evidence that each and every limitation of that claim is met by Apple's accused processes under the doctrine of equivalents? Answer "Yes" (for Motorola) or "No" (for Apple) for each asserted claim.

    Claim 1 of the '898 Patent (iPhone 4)    _____

    Claim 2 of the '898 Patent (iPhone 4)    _____

    Claim 5 of the '898 Patent (iPhone 4)    _____

If you answered "Yes" to any claim in Question 1 or Question 2, please move to Question 3. If you answered "No" to each of the claims in Question 1 and Question 2, please move directly to Question 4.

2. Motorola objects to the Court's verdict entry on Contributory Infringement. (D.E. 1009-4 at 2.) The verdict form suggests that a finding of infringement requires that "the [accused] component did not have non-infringing uses." *Id.* However, this is too high a standard and it is not the law of the Federal Circuit.

35 U.S.C. § 271(c) states:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and <u>not a staple article or commodity of commerce suitable for substantial noninfringing use</u>, shall be liable as a contributory infringer.

The statute is clear that the accused component cannot have a ***substantial*** noninfringing use, not that it cannot have any non-infringing use at all.

The proper standard for contributory infringement (and that which Motorola respectfully requests should be included in both the verdict form and jury instructions) is that a patent holder must show that (a) the supplier's product was used to commit acts of direct infringement; (b) the product's use constituted "a material part of the invention"; (c) the supplier knew its product was "especially made or especially adapted for use in an infringement" of the patent; and (d) the product is "not a staple article or commodity of commerce suitable for substantial noninfringing use." *Arris Group, Inc. v. Brit. Telecomm. PLC*, 639 F.3d 1368, 1376 (Fed. Cir. 2011); *Worldtech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1316 (Fed. Cir. 2010)

6

("a party who sells a component with knowledge that the component is especially designed for use in a patented invention, and it is not a staple article of commerce suitable for substantial noninfringing use, is liable as a contributory infringer"); *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006) ("Thus, to prevail on contributory infringement, DSU must have shown that ITL made and sold the Platypus, that the Platypus has no substantial non-infringing uses in its closed-shell configuration, that ITL engaged in conduct (made sales) within the United States that contributed to another's direct infringement, and that JMS engaged in an act of direct infringement on those sales that ITL made in the United States.")

Motorola further objects to the portion of the verdict entry stating that the "important component. . . was not a common item with other uses that do not infringe the '898 invention." Motorola respectfully submits that the "component" accused of infringing the '898 patent is the portion of the Apple Accused Products that practices the method necessary to comply with 3GPP TS 44.060 § 9.3.1.1. That the Apple Accused Products or Intel baseband processors practice methods other than claims 1, 2, and 5 is immaterial to Motorola's ability to demonstrate contributory infringement. As was explained more fully by the Federal Circuit in *Ricoh Co., Ltd. v. Quanta Computer Inc.*:

> It thus follows that Quanta should not be permitted to escape liability as a contributory infringer merely by embedding that microcontroller in a larger product with some additional, separable feature before importing and selling it. If we were to hold otherwise, then so long as the resulting product, as a whole, has a substantial non-infringing use based solely on the additional feature, no contributory liability would exist despite the presence of a component that, if sold alone, plainly would incur liability.FN7 Under such a rule, evasion of the protection intended by Congress in enacting § 271(c) would become rather easy. A competitor who wished to sell hardware that would enable infringement of a patented process could do so without incurring liability for contributory infringement by selling a device that simply embedded the hardware for practicing the patented process

7

> within other hardware that also performs another process, or by combining the enabling hardware with other hardware before importing it. Moreover, only the first person in the supply chain (in the example above, the manufacturer who sells the microcontroller) could be liable for contributory infringement. The person who bought that infringing component and assembled it into something else would face no liability for contributory infringement, even if that component were good for nothing but infringement. And most importantly, no § 271(c) liability could ever be found where an infringing component is both manufactured and assembled into something else by the same person. In many of these situations, the only remedy would be against end users of the product for direct infringement. This result would be contrary to what the Supreme Court recognized in Grokster as a fundamental purpose of contributory infringement liability: because "it may be impossible to enforce rights in the protected work effectively against all direct infringers, the only practical alternative [is] to go against the distributor of the copying device for secondary liability." *Grokster*, 545 U.S. at 929-30, 125 S.Ct. 2764.
>
> FN7. Ricoh offers a useful illustration of this arbitrary result in its brief. Consider a hypothetical patented method of using an answering machine to take messages. If a manufacturer of an infringing answering machine sells two versions of the device, a stand-alone version and a version with a built-in telephone, consumers directly infringe when they use either to carry out the patented message-taking method. Under the dissent's logic, however, the manufacturer would only incur contributory liability for the stand-alone answering machine, and not for the version that is identical but for the addition of a telephone.

550 F.3d 1325, 1337-38 & n.7 (Fed. Cir. 2008).

For these reasons, Motorola respectfully submits that the instruction on contributory infringement Motorola provided in its jury instructions is more consistent with the Federal Circuit case law cited above:

> The defendants are liable for contributory infringement of a claim if the plaintiffs prove by a preponderance of the evidence:

8

>(1) the defendants sell, offer to sell, or import within the United States a component of a product, or apparatus for use in a process, during the time the asserted patents are in force;
>
>(2) the component or apparatus has no substantial, noninfringing use;
>
>(3) the component or apparatus constitutes a material part of the invention;
>
>(4) the defendants are aware of the asserted patents and know that the products or processes for which the component or apparatus has no other substantial use may be covered by a claim of the asserted patents or may satisfy a claim of the asserted patents under the doctrine of equivalents; and
>
>(5) that use directly infringes the claim.

(D.E. 917-10 at 10.)

3. Motorola objects to the use of the phrases "(For Apple)" and "(For Motorola)" following the verdict check boxes for induced infringement, contributory infringement, willful infringement, and invalidity. The verdict form for Apple's patents lacks such instruction, and Motorola respectfully submits that the descriptions potentially invoke jury bias without providing any clarifying instruction to the jury.

### IV. MOTOROLA'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS FOR THE MOTOROLA LIABILITY TRIAL

1. Motorola objects to the following sentence of Paragraph 1.4 of the Court's proposed jury instructions: "Although Motorola's 898 patent has many claims, Motorola is only arguing that Apple's iPhone4 infringes claims 1, 2, and 5 of the patent." This paragraph is misleading in that it suggests that Apple has not accused any other Apple products of infringement of the '898 patent. Motorola requests changing the language as follows: "Although

9

Motorola's 898 patent has many claims, Motorola is only arguing that Apple's ~~iPhone4~~ products infringes claims 1, 2, and 5 of the patent."

This would make Motorola's instruction consistent with the corresponding instruction for Apple's patent: "Although each of Apple's patents has many claims, Apple is only arguing that Motorola's products infringe a few claims of each patent." (*See* D.E. 1009-1 at 2.)

2. Apple's instruction include a section entitled "Representative Products" that states that "Apple alleges that many different Motorola products infringe . . . ." (*Id.*) Likewise here, Motorola has accused multiple Apple products of infringement. However, Motorola's jury instructions do not include a separate section on representative products. Section 1.2 of Motorola's instructions, which does mention that the iPhone 4 is the representative product, includes no indication that, as with the Apple patents, "many different [Apple] products" have been accused of infringement. (D.E. 1009-3 at 2 ("In this trial, you must consider whether the '898 patent is invalid and whether the Apple iPhone4, which is representative of all Apple products at issue in this case, infringes it.") Motorola requests that the Court add a section entitled "Representative Product" as follows:

> 1.2 **Representative Product** – Motorola alleges that many different Apple products infringe the '898 Patent in this trial. Rather than discuss every single device, the parties have agreed to focus on a specific product – the iPhone 4 – as representative of the rest.

3. Motorola objects to the Court's instructions on contributory infringement (Sections 1.5 and 2.14) for the same reasons that it objects to the Court's verdict entry on contributory infringement. *See supra* at 7-10.

Dated: June 7, 2012                                        Respectfully submitted,

                                                           MOTOROLA MOBILITY, INC. AND
                                                           MOTOROLA SOLUTIONS, INC.
                                                           By:     */s/ Stephen A. Swedlow*


                                                           Edward J. DeFranco
                                                           Raymond Nimrod
                                                           Richard W. Erwine
                                                           QUINN EMANUEL URQUHART
                                                               & SULLIVAN, LLP
                                                           51 Madison Avenue, 22nd Floor
                                                           New York, NY 10010
                                                           Telephone: (212) 849-7000
                                                           Facsimile: (212) 849-7100
                                                           Email: eddefranco@quinnemanuel.com
                                                           raynimrod@quinnemanuel.com
                                                           richarderwine@quinnemanuel.com

                                                           Charles K. Verhoeven
                                                           David A. Perlson
                                                           QUINN EMANUEL URQUHART
                                                               & SULLIVAN, LLP
                                                           50 California Street, 22nd Floor
                                                           San Francisco, CA 94111
                                                           Telephone: (415) 875-6600
                                                           Facsimile: (415) 875-6700
                                                           Email:
                                                           charlesverhoeven@quinnemanuel.com
                                                           davidperlson@quinnemanuel.com

                                                           Brian Cannon
                                                           QUINN EMANUEL URQUHART
                                                           & SULLIVAN, LLP
                                                           555 Twin Dolphin Drive, Suite 560
                                                           Redwood Shores, CA  94065
                                                           Telephone: (650) 801-5000
                                                           Facsimile:  (650) 801-5001
                                                           Email:  briancannon@quinnemanuel.com

                                                           David A. Nelson
                                                           Stephen Swedlow
                                                           QUINN EMANUEL URQUHART
                                                               & SULLIVAN, LLP
                                                           500 West Madison St., Ste. 2450
                                                           Chicago, IL 60661

Telephone: (312) 705-7400
Facsimile: (312) 705-7401
Email: davenelson@quinnemanuel.com
      stephenswedlow@quinnemanuel.com

*Attorneys for Defendant Motorola Mobility, Inc. and Motorola Solutions, Inc. (f/k/a Motorola, Inc.)*

**CERTIFICATE OF SERVICE**

      The undersigned certifies that all counsel of record will be served with a true and correct copy of the foregoing by electronic mail, on this the 7th day of June, 2012.

*/s/ Stephen A. Swedlow*